The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Eugene ROMERO, Defendant–Appellant.

Nos. 86CA1267, 86CA1300.

Colorado Court of Appeals,
Div. III.

Oct. 27, 1988.

As Modified on Denial of Rehearing
Nov. 25, 1988.

Rehearing Denied Dec. 15, 1988.

Certiorari Denied Feb. 27, 1989.

of felony theft, second degree burglary, and, in a bifurcated trial, five habitual criminal counts. We affirm.

In 1985, police responded to a burglary in progress call after neighbors reported seeing two men in a Denver home. One officer who had seen one of the men emerge from a window in the home pursued this burglar on foot. During the chase the officer was able to get a good look at the burglar's physique and facial appearance when he turned and looked back at the officer while running.

This individual, later identified as the defendant, temporarily eluded the officer but other officers arrived and he was apprehended. A search of defendant's person produced two rings and a wrist watch. The owner of another home which had been burglarized a short while earlier positively identified the two rings as items stolen from her home.

The convictions and sentence here at issue followed.

## I.

Defendant contends he was denied effective assistance of counsel because, although he was represented at trial by the public defender, that office had an interest in the proceedings adverse to the defendant. We disagree.

Defendant was originally charged with two counts of second degree burglary and one count of felony theft arising out of two separate house burglaries. The public defender was appointed to represent him on those charges. He pled not guilty. Thereafter, the district attorney amended his information to add five habitual criminal counts.

After the habitual criminal counts were added, the trial court was advised by the public defender of defendant's desire to challenge the constitutional validity of the previous convictions upon which the habitual criminal counts were based. Also, the trial court was informed of the district attorney's intention to call Richard Davis, an attorney who had once represented defendant, and who was then a member of

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Davis, Graham & Stubbs, Michael J. Gallagher, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, Eugene Romero, appeals a judgment of conviction and life sentence entered on a jury verdict finding him guilty

the public defender's office, in opposition to any such challenge. It was stated that, contrary to defendant's assertions that he had not been properly advised of the elements of the charged offenses, Davis would testify that, as a matter of course, he advised his clients of the elements of the charges against them. Based on this potential conflict, the trial court appointed private counsel to represent defendant concerning the validity of the previous convictions, while the public defender's office represented him at the trial on the new criminal charges.

The appointed private counsel filed a motion in limine to prohibit the use of previously tendered guilty pleas in the habitual criminal trial. Thereafter, a hearing was held on this motion during which the court was advised that public defender Davis stood ready to testify. This hearing consisted primarily of the introduction of transcripts of the former pleas and offers of proof concerning what Davis and others would say if called to testify. Davis did not testify because, in effect, the court stated that it knew already what his testimony would be concerning whether defendant had been advised by Davis of the elements of the charged offenses. At the conclusion of the hearing, the court denied the motion in limine.

█ Whether an attorney should be disqualified from representing an accused is largely a matter within the discretion of the trial court. *People v. Reyes,* 728 P.2d 349 (Colo.App.1986). In deciding matters concerning conflict of interest, "the goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *People v. Garcia,* 698 P.2d 801 (Colo.1985).

In this case, the trial court appointed private counsel to conduct the pre-trial hearing in which the potential conflict could have occurred. As it developed, no actual conflict arose since Davis was not called to testify. Under such circumstances, we find no abuse of discretion in "shaping a remedy" by appointing private counsel to represent defendant in the portion of proceedings where a conflict might have

arisen and then allowing the public defender to resume the defense of defendant at the subsequent trial on the new charges.

## II.

Defendant next contends his right to attend all critical stages of his trial was violated when the court communicated with the jury in the presence of his attorney but in his absence. We find no reversible error.

█ The defendant in a criminal case has a fundamental right to have *counsel* present when the court responds to questions from the jury after it has commenced deliberations. Colo. Const. art. II, § 16; *Leonardo v. People,* 728 P.2d 1252 (Colo. 1986). However, whether the federal or Colorado constitution require the presence of the *defendant* when the court communicates with the jury after deliberations have begun has not been previously decided. *See Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (assuming, without deciding, that constitutional right was implicated); *Leonardo v. People, supra.*

█ Even if we assume, *arguendo,* that there was constitutional error in merely having defendant's counsel present without defendant, reversal is not required if the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Leonardo v. People, supra.* Moreover, if the court has properly responded to a jury's inquiry, there is no prejudice and the communication is necessarily harmless beyond a reasonable doubt. *Leonardo v. People, supra.*

ABA, Standards for Criminal Justice, Standard 15–4.3(a) (2d ed. 1980), provides:

"If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:

"(i) the jury may be adequately informed by directing their attention to some portion of the original instructions;

"(ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

"(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine."

In this case, the jury sent the following inquiry:

"Were the rings valued at $300 at least? According to the testimony? Is theft charge based on the fact that the rings are worth at least $300.00?"

In response to this inquiry, the trial court held a conference with defendant's counsel and the prosecutor, but without the presence of defendant. The court stated for the record that it intended to answer the inquiry by telling the jurors that they had to decide the case on the basis of the instructions submitted. In response to explicit inquiries by the court, both the prosecutor and defense counsel stated they had no objection to that answer.

The jury inquiry concerned the value of the stolen items, and the record shows there was conflicting evidence concerning that value. Therefore, such value was a factual matter about which the court could not express an opinion. *See* ABA, Standards for Criminal Justice, *supra.* Hence, the court's response to the inquiry was proper, and error, if any, in not requiring defendant's presence at the conference deciding on the reply to the jury's question, was harmless beyond a reasonable doubt.

### III.

Defendant contends he was effectively denied the right to testify during the habitual criminal portion of his trial since he was not advised of his right to testify during that portion of the bifurcated process. We do not agree.

■ A criminal defendant has the right to testify in his own defense. *Apodaca v. People,* 712 P.2d 467 (Colo.1985). This principle applies as fully to the habitual criminal phase of a prosecution as it does to the trial on the substantive charges. *See Moore v. People,* 707 P.2d 990 (Colo. 1985).

■ Here, during the trial on the substantive charges, defendant was advised that he had the right to testify or to remain absolutely silent and that, if he did not testify, the district attorney could not comment on his silence.

Thereafter, the trial on the substantive charges was completed and defendant, who did not testify, was found guilty of felony theft and second degree burglary. The court did not further advise the defendant concerning his rights prior to the habitual criminal phase of the bifurcated process which began on the same day as the original advisement.

Defendant does not cite, and our research fails to reveal, any case law that requires readvisement of constitutional rights in circumstances such as these. Therefore, in resolving this issue, we find helpful those cases dealing with waiver of the right to testify.

Under such cases, the court must first determine whether the defendant was adequately informed of his right to testify. Second, the court must determine whether the defendant knowingly, intelligently, and voluntarily waived the right. *Cf. Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Curtis,* 681 P.2d 504 (Colo.1984). Moreover, the validity of a waiver must be based on the totality of circumstances surrounding the waiver. *People v. Chase,* 719 P.2d 718 (Colo.1986).

Factors to be considered in assessing the validity of a waiver include the lapse of time between an initial advisement and subsequent proceedings. *See People v. Chase, supra.* The ultimate question is whether, considering the totality of the circumstances, defendant was sufficiently aware of the continuing nature of his constitutional right to testify. *See People v. Chase, supra.*

In this case, the defendant does not contest the adequacy of his waiver of his right to testify in the substantive portion of his bifurcated trial. *See People v. Curtis, supra.* In addition, the habitual criminal trial immediately followed the substantive trial. Therefore, while courts indulge every rea-

sonable presumption against waiver, *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), we will not assume that defendant, having once been advised, did not know of his continuing right to testify.

## IV.

Next, defendant argues that the verdict forms on the habitual criminal counts, in essence, did not contain all elements of the charges. We disagree.

At trial, defendant tendered no alternative verdict forms and accepted those forms now challenged without objection. Thus, a plain error standard of review applies. *People v. Guffie,* 749 P.2d 976 (Colo. App.1987). Accordingly, defendant must show that the verdict forms contained errors which both affected a substantial right and cast serious doubt on the reliability of the jury's findings of guilt. *People v. Guffie, supra.*

Instructions which are incomplete may be cured by other instructions. *Block v. Balajty,* 31 Colo.App. 237, 502 P.2d 1117 (1972).

Our review of the record shows that, while the instruction accompanying the verdict forms was incomplete, another instruction fully and correctly defined the duty of the prosecution to prove beyond a reasonable doubt both the defendant's identity and the fact of prior felony convictions. The jury is presumed to have considered and followed the instructions as a whole. *Mathis v. People,* 167 Colo. 504, 448 P.2d 633 (1968).

These verdict forms were adequate to demonstrate that the jury unanimously agreed that defendant was the same person identified in the prosecution's documents and that this person was previously convicted of each of the subject felonies. *See* § 16–13–103(4), C.R.S. (1986 Repl. Vol. 8A).

## V.

Last, defendant contends the habitual convictions are based on the use of uncon-stitutionally obtained prior convictions. We disagree.

Defendant was adjudicated a habitual offender by virtue of jury verdicts finding that he had five prior felony convictions. Defendant now attacks three of these prior convictions, leaving two unchallenged. Since a total of three prior felony convictions are needed to sustain a life sentence under the habitual offender act, § 16–11–101(2), C.R.S. (1986 Repl. Vol. 8A), if any one of the three challenged felony convictions is valid, the sentence must be affirmed.

The defendant bears the burden of demonstrating that a guilty plea should be considered a nullity and that the conviction which it supports may not be used for penalty enhancement. *See People v. Gutierrez,* 622 P.2d 547 (Colo.1981). To suppress a prior conviction, an accused must make at least a prima facie showing of a constitutional violation. A mere showing of uncertainty as to whether his constitutional rights were fully protected is insufficient. *See People v. Mascarenas,* 632 P.2d 1028 (Colo.1981). Moreover, the standards which determine the constitutional validity of a guilty plea are those in effect at the time the plea was accepted. *People v. Leonard,* 673 P.2d 37 (Colo.1983).

In the 1973 case No. CR5839, in which defendant pled guilty to second degree burglary, the record of the providency hearing, taken as a whole, establishes that defendant, who was represented by counsel, understood both his right to a jury trial and the nature of the offense to which he pled. Therefore, that guilty plea was valid according to the then applicable legal standards. *See People v. Leonard, supra; People v. Canino,* 181 Colo. 207, 508 P.2d 1273 (1973) ("formalistic recitation" of every element not necessary where record as a whole shows understanding by defendant). That judgment of conviction, together with the two unchallenged convictions, provides the necessary support for the life sentence imposed under the habitual criminal statute.

JUDGMENT AND SENTENCE AFFIRMED.

STERNBERG and CRISWELL, JJ., concur.