Eugene ROMERO, Petitioner,

v.

Robert FURLONG and Gale Norton, Attorney General, Respondents.

No. Civ.A. 95–WM–1149.

United States District Court, D. Colorado.

Oct. 20, 1998.

Howard A. Pincus, Assistant Federal Public Defender, Denver, CO, for Petitioner.

Clemmie P. Engle, Senior Assistant Attorney General, Criminal Enforcement Section, Denver, CO, for Respondents.

## MEMORANDUM OPINION AND ORDER

MILLER, District Judge.

This case is before me, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), on the recommendation of the Magistrate Judge, filed October 15, 1996. The Magistrate Judge recommends that the petition for writ of habeas corpus be granted on the issue of ineffective assistance of counsel, that petitioner's remaining arguments be rejected, and that I order respondents to retry petitioner within a reasonable period of time.[1] Both petitioner and respondents have objected to the recommendation. I have reviewed *de novo* the petition, respondents' answer, petitioner's reply, the state court record, the recommendation, and the parties' objections.

Petitioner filed this case *pro se* but is now represented by the Federal Public Defender's Office. His petition raises four grounds for relief: (1) ineffective assistance of counsel; (2) a disproportionate sentence in violation of the Eighth Amendment; (3) constitutional invalidity of the guilty pleas underlying his habitual criminal conviction; and (4) violation of his right to be present during trial.[2]

Judge Borchers found merit in only the first argument, and I accept, without further discussion, his assessment that the remaining arguments do not warrant relief.

On the issue of ineffective assistance of counsel, I make the following findings and conclusions.

### Brief Factual Background

On August 7, 1986, petitioner received a life sentence in Denver County Court upon his conviction of burglary, theft, and, in a bifurcated trial, five habitual criminal counts. The Colorado Court of Appeals affirmed petitioner's sentence on direct appeal. *People v. Romero*, 767 P.2d 782 (Colo.App.1988), *cert. denied*, (Colo. February 27, 1989).

Petitioner filed a postconviction motion pursuant to Colo.R.Crim.P. 35(c). The trial court denied relief, and the Colorado Court of Appeals affirmed in an unpublished opinion. *People v. Romero*, No. 92CA1384 (Colo. App. November 18, 1993).[3]

The genesis for petitioner's ineffective assistance claims occurred when the state amended its charges against petitioner to include the habitual criminal counts. The trial court had appointed Claudia Jordan, a deputy Public Defender, to represent petitioner. A potential conflict of interest with the Public Defender's Office arose when petitioner indicated that he would challenge the validity of the prior convictions that formed the basis for the habitual criminal counts. The district attorney notified the court that he intended to call Richard Davis, an attorney with the Public Defender's Office who had represented petitioner in a prior case, as a witness adverse to petitioner. It appears that Mr. Davis was expected to refute petitioner's claim that Mr. Davis had not advised him of the elements of an offense in connection with a guilty plea.

---

1. Petitioner suggests, as an alternative, that I require respondents to offer him the same plea agreement he rejected in his state criminal trial. Because I disagree with the Magistrate Judge that petitioner is entitled to relief, I do not consider this alternative.

2. Although the petition includes a claim that his right to testify was violated, petitioner has not

pursued this claim since counsel was appointed for him. Judge Borchers did not consider the claim, and petitioner makes no objection to the omission. Accordingly, the claim is waived.

3. The state court opinions, as well as the parties' state court briefs, are included in the state record.

Counsel and the court recognized that a potential conflict of interest existed. Upon the suggestion of Ms. Jordan, the trial court appointed a private attorney, Stanley Marks, to represent petitioner in the habitual criminal portion of the case.[4] The court stated its intention that Ms. Jordan continue to represent petitioner on the burglary and theft counts. When asked whether he still wanted Ms. Jordan to represent him, petitioner stated, somewhat ambiguously, "Yeah, I guess, yeah. No, I don't then." State Record 5:5. The court and petitioner's counsel then had the following colloquy:

> THE COURT: Well, Ms. Jordan, there's no conflict if you represent him in the trial, is there?

> MS. JORDAN: I don't think so, Your Honor. I think once an attorney advises him of the pleas, I think the conflict would disappear. Right now though, there is sort of a problem since there are the counts there in terms of any plea bargain, it does affect what will happen eventually. But once another attorney enters, I think he'll be able to resolve that.

> THE COURT: I'll appoint another attorney to handle the habitual counts and that will be decided, and then you can go on and represent the defendant. I'll call Joyce Seelen today and see how quickly she can do it. But the record is really clear that the continuance vacating the trial date of Monday, May 5th, is at the request of the defendant and caused by the defendant and not caused by the Court or the People.

> MS. JORDAN: That's correct, Your Honor.

*Id.*

Petitioner made no objection to proceeding in that fashion. Indeed, the record is devoid of any written or spoken objection by petitioner to Ms. Jordan acting as his counsel during the trial.

Thereafter, on the morning of the first day of trial, Ms. Jordan made a record in the presence of the defendant that she was advising him to accept the offer of the government of a sixteen-year sentence in exchange for a plea agreement rather than facing essentially a life-imprisonment term of forty years. Ms. Jordan told petitioner that by accepting the proffered plea agreement his sentence would in effect be eight years, but he nevertheless chose to go to trial. In particular, Ms. Jordan stated:

> I have advised him that there is a good chance that he will be found guilty, and reviewing the evidence in the file and reviewing the preliminary hearing, there is a good chance that he will lose the trial.

> He has decided that he would prefer to go to trial and have his day in court.

State Record 7:3.

After reciting her advice and the defendant's reaction, Ms. Jordan asked Mr. Romero whether he wanted to say anything and his laconic response was "nope." State Record 7:4.

Ms. Jordan also made a record that petitioner refused to remove his county jail clothes in exchange for street clothes which were available. His counsel stated that petitioner said that "he doesn't need to please anybody." Ms. Jordan indicated that he was "upset" because she thought "there is a good chance that he will lose this case, and [hence] there is no need for him to comply with any of my requests since I feel that he will lose." State Record 7:3.

After the trial judge then began proceedings, he asked petitioner if he wanted to change into clothes that his wife had brought. Mr. Romero responded as follows:

> DEFENDANT: No, I don't.

> THE COURT: You do not want to put them on?

> DEFENDANT: No.

---

4. Mr. Marks filed a motion in limine seeking to preclude the use of petitioner's guilty pleas related to his prior convictions. Although Richard Davis was available to testify at the hearing on this motion, the trial court determined that such testimony was unnecessary. The court indicated that it was familiar with what would be Mr. Davis's expected testimony, *i.e.*, that he routinely advised his clients of the elements of charged offenses. The court denied the motion in limine.

THE COURT: That is your choice.

State Record 7:10.

Finally, just prior to jury *voir dire*, Ms. Jordan made a final request on behalf of Mr. Romero:

MS. JORDAN: Mr. Romero would like to make a request to the court.

THE COURT: Yes Sir.

MS. JORDAN: He doesn't want to participate in the trial. He would like to stay in the tank on the fourth floor. He does not want to participate in the trial. He thinks it is a farce.

THE COURT: All right. No, he will be present.

State Record 7:16.

The matter then proceeded to trial. Ms. Jordan continued to represent petitioner on the burglary and theft counts without objection by petitioner, and Mr. Marks represented him on the habitual criminal portion of the case. The trial concluded in his conviction and life sentence.

Following his unsuccessful direct appeal, petitioner filed a Rule 35(c) Motion. On November 15, 1991, Denver District Judge Federico C. Alvarez held an evidentiary hearing at which Mr. Romero and Ms. Jordan testified, as well as another attorney, John Richilano, an expert witness.[5] On July 16, 1992, Judge Alvarez made extensive findings and conclusions and denied petitioner's motion in its entirety. State Record 1:103–114.

With regard to the claims of ineffective assistance of counsel, Ms. Jordan and Mr. Romero testified that the conflict of interest caused the attorney/client relationship to deteriorate, that the defendant ceased cooperating and withdrew from any substantive participation in the trial, and that the conflict caused him to lose confidence in his counsel. Ms. Jordan testified she would have withdrawn but for the policy of the office of the public defender. State Record 1:108–109.

The trial judge found petitioner's testimony incredible and illogical and concluded that petitioner had failed to show either of the required elements for establishing ineffective

assistance of counsel under Colorado law, *i.e.*, that counsel's performance was below the level of reasonably competent counsel and that counsel errors were so serious they deprived the criminal defendant of a fair trial, citing *People v. Drake*, 785 P.2d 1257 (Colo. 1990). State Record 1:108–110.

### Discussion

Petitioner's ineffective assistance of counsel argument has taken two forms over the course of his state and federal litigation. On his direct appeal, he argued that the potential conflict of interest between his trial counsel and the state's witness on the habitual criminal count was a violation of the professional ethics rules and resulted in ineffective assistance of counsel (the "actual conflict" theory). The Colorado Court of Appeals rejected this contention, finding that the district court's appointment of separate counsel on the habitual criminal issues was adequate to resolve the conflict. *People v. Romero*, 767 P.2d at 784.

In his Rule 35(c) motion, petitioner changed his focus to argue that the potential conflict of interest resulted in a complete breakdown of the attorney/client relationship between petitioner and Ms. Jordan on the substantive counts (the "complete breakdown" theory). He asserted that his distrust for Ms. Jordan caused him to reject a favorable plea agreement. Without identifying the "complete breakdown" argument of ineffective assistance, the Colorado Court of Appeals declined to address this argument, concluding that it was the same claim raised on direct appeal even though the direct appeal dealt only with the "actual conflict" theory and made no mention of the "complete breakdown" theory. 767 P.2d at 783–784.

### 1. *Procedural Default Issue*

■ Respondents argue that petitioner is precluded from pursuing his ineffective assistance claim on either theory in this habeas action, because the disposition of those claims in the state courts created a procedural bar. The Magistrate Judge did not directly address this issue, yet its resolution is necessary in deciding this case.

---

**5.** The transcript of the Rule 35(c) hearing is   contained in Volume 10 of the State Record.

Respondents argue that, once petitioner elected to raise an ineffective assistance claim on direct appeal, he was bound by that decision as a matter of procedure "against successive applications for the same or similar relief," citing *People v. Bastardo*, 646 P.2d 382 (Colo.1982); *People v. Holmes*, 819 P.2d 541 (Colo.App.1991); *Coleman v. Saffle*, 912 F.2d 1217, 1229 (10th Cir.), *cert. denied*, 497 U.S. 1053, 111 S.Ct. 22, 111 L.Ed.2d 834 (1990). Those cases are authority for precluding reconsideration of the "actual conflict" theory in this proceeding. As to the remaining issue of "complete breakdown," however, respondents' cases are not dispositive. That issue is necessarily premised upon the post-conviction hearing pursuant to Rule 35(c) that resulted in significant additional evidence not originally considered by the first *Romero* decision of the Colorado Court of Appeals. Accordingly, the circumstances of this case are not simply reargument of facts already known at the time of the first appeal (see *Coleman v. Saffle*, 912 F.2d at 1229) or merely argument of a new legal theory without additional facts. *See People v. Rodriguez*, 914 P.2d at 254.

Although there may be a general rule of preclusion absent a showing of either cause and prejudice or fundamental miscarriage of justice, the Tenth Circuit acknowledges that claims of ineffective assistance of counsel may well require a post-conviction factual hearing before the issue can be adequately presented to the court on appeal, thus militating against preclusion by the first appeal. See *Osborn v. Shillinger*, 861 F.2d 612, 622 (10th Cir.1988).

In *Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir.1994), *cert. denied*, 515 U.S. 1135, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995), the Tenth Circuit reaffirmed the principles of *Osborn* and rejected essentially the same argument made by respondents here as an unacceptable "Hobson's choice," *i.e.*, raising the claim on direct appeal without the benefit of additional fact finding or having the claim precluded under state law. 41 F.3d at 1364. Even if some of the predicate facts were discussed in the briefs of the first Colorado appeal, the Court of Appeals limited its decision to the "actual conflict" theory and made no mention of a "complete breakdown" theory which was the major thrust of the post-conviction hearing and appeal. To preclude appeal of the adverse decision on the "complete breakdown" theory because it was "similar" to the issue decided on direct appeal without the benefit of the factual hearing would be inconsistent with *Brecheen*. I conclude this claim is not precluded by procedural bar and now resolve the "complete breakdown" theory on its merits.

### 2. Complete Breakdown Theory

#### a. Standard of Review: Presumption of Correctness

The issue of effective assistance of counsel was resolved adversely to petitioner following a full hearing of his Rule 35(c) Motion. The factual determinations of Judge Alvarez are presumed correct.[6] Respondents claim that the Magistrate Judge's recommendation ignores or misapplies that presumption. Petitioner urges that this "presumption of correctness" argument was waived by respondents and should be disregarded by me. Since the presumption is mandated by statute, it cannot be waived by me or, certainly, any party.

The Magistrate Judge's handling of this statutory mandate is curious. In a footnote, he refers to the "principal" of the "presumption of correctness" with no reference to the mandates of Section 2254. Then, relying on *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982), he concludes that petitioner's trial counsel's testimony is clear and to the point and that the only question remaining is legal, "not factual."

---

**6.** Prior to the 1996 Amendment, 28 U.S.C. § 2254(d) provided that state court factual determinations after hearing "shall be presumed to be correct" unless other matters are shown. Following the 1996 Amendments, § 2254(e) provides that "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Thus, regardless of whether the Amendment applies to this case, the trial court's factual determinations are presumed correct.

Recommendation of United States Magistrate Judge, page 12 n. 3.

The Magistrate Judge's reliance upon *Sumner v. Mata* is misplaced. The Supreme Court criticized the Ninth Circuit for not applying "the 'presumption of correctness' which is mandated by the statute to the factual determinations made by the [state court]. Indeed, the court did not even refer in its opinion to Section 2254(d)." *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981). The Magistrate Judge here likewise failed to apply the statutory presumption or consider whether an exception applied. The second *Sumner* decision provides that the federal court:

> face up to any disagreement as to the facts and defer to the state court unless one of the factors listed in Section 2254(d) is found. Although the distinction between law and fact is not always easily drawn, we deal here with a statute that requires the federal courts to show a high measure of deference to the fact findings made by the state courts. To adopt the Court of Appeals' view would be to deprive this statutory command of its important significance.

455 U.S. at 597, 102 S.Ct. at 1307.

The Magistrate Judge gave virtually no deference to the trial judge's factual determinations. Instead, the Magistrate made his own factual findings, principally based upon the testimony of Ms. Jordan, without explaining or showing in any way why he did not defer to the state court determinations as required by the *Sumner* cases. In doing so, he disregarded significant findings by the trial court which included express findings that petitioner's testimony was contradictory and not credible or logical. State Record 1:109. The trial court made several references to Ms. Jordan's testimony, including the notation that she testified without prior review of the file. State Record 1:108. On that record and after observing the witnesses, the trial court rejected petitioner's claim that another attorney would have con-

vinced petitioner to accept the proposed plea bargain and concluded under "the totality of the circumstances" that petitioner had not proved "that his trial counsel was ineffective." State Record 1:110.

■ The deference due Judge Alvarez's findings under Section 2254 includes his findings on credibility. *Church v. Sullivan,* 942 F.2d 1501, 1516 (10th Cir.1991). This presumption of correctness applies not only to express credibility findings but implied findings as well. *Id.* I conclude that the trial judge impliedly made the necessary credibility determinations with regard to other testimony inconsistent with his decision even though he did not expressly identify any witness other than petitioner as being noncredible. Again, the Magistrate Judge wholly failed to deal with the "presumption of correctness" of the trial judge's credibility determinations.

I also note that the Magistrate Judge, focusing on trial counsel's later testimony, concluded that the breakdown of the attorney-client relationship was solely the result of the endorsement of her colleague as a witness in the habitual criminal phase of the proceeding. Recommendation, page 16. However, the reality of the record is that, before the trial on the merits, Ms. Jordan stated that petitioner was "upset" because it was her opinion that "there is a good chance that he will lose this case" and, as a consequence, he felt there was no need "to comply with any of my requests since I feel he will lose." State Record 7:3. (In the Rule 35(c) evidentiary hearing, Ms. Jordan confirmed this advice. State Record 10:56–57). In any case, he preferred to "have his day in court." State Record 7:3. Thus, at minimum, there is a conflict in record on why petitioner did not follow counsel's advice.[7] Given that conflict, the mandated deference to the trial judge's resolution has even more importance.

b. *Proof of Ineffective Assistance*

The Supreme Court established a two-part test to evaluate claims of ineffective assis-

---

**7.** Several reasons for rejecting the plea advice are given or suggested by inference from the record: petitioner's stated reason of loss of confidence because of the conflict; his peeve with his counsel for concluding that there was a "good chance" he would lose; his rejection of the trial as a "farce"; his desire to "have his day in court"; and, presumably, his belief or hope that trial would lead to a better result than the offered plea.

tance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984): "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A lawyer's representation is deficient only if it falls below an objective standard of reasonableness, measured under prevailing professional norms. *Id.* at 2064, 2065.

■ Second, the defendant must show that his defense was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. To establish prejudice, he must show that there is a reasonable probability that a different result would have occurred but for the deficient representation. *Id.* at 2068. In assessing counsel's decisions, I must afford her performance a high degree of deference. *Id.* at 2065.

As noted by the trial judge in his Rule 35(c) decision, petitioner did not really offer any proof of either element. He does not argue that Ms. Jordan's trial performance was deficient in any way. Given this omission, it is impossible to infer that any nonexistent error was so serious as to deprive petitioner of a fair trial whose result is reliable or that a different result would have obtained but for the ineffective assistance.

Even with regard to the plea offer, petitioner does not argue that Ms. Jordan acted improperly. The record is clear that she advised him to accept the offer and informed him of the consequences. Indeed, her advice was eminently proper and effective assistance of counsel.

■ Accordingly, under a *Strickland* analysis, petitioner cannot prevail. Petitioner's approach, however, was not a traditional *Strickland* analysis but rather that the circumstances are such that a presumption of ineffectiveness makes it unnecessary to ex-amine the actual performance of counsel, relying principally on *United States v. Soto Hernandez,* 849 F.2d 1325 (10th Cir.1988) and *Brown v. Craven,* 424 F.2d 1166 (9th Cir.1970). "A complete breakdown in communication between an attorney and client may give rise to such a presumption." *Soto Hernandez,* 849 F.2d at 1328. The Magistrate Judge applied this *per se* analysis to conclude ineffective assistance without the necessity of meeting the *Strickland* standards. I disagree that the *Soto Hernandez* complete breakdown analysis is appropriate in this case.

As the Supreme Court made clear in *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), our adversarial justice system requires effective assistance of counsel to have a reliable trial process. If counsel fails to provide a "meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659, 104 S.Ct. at 2047. The Court recognized that there are circumstances where, although counsel is available, the likelihood of effective assistance is so small that presumption of prejudice is appropriate. *Id.* (citing *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (out-of-state lawyer ordered, with only six days notice, to defend murder defendants over his objection)). In *Cronic* itself, a criminal fraud case, however, the court did not apply the presumption even though the appointee, a young lawyer with real estate practice background, had only twenty-five days to prepare for a complex criminal trial, after the government had spent over four years investigating literally thousands of documents. The Court concluded ineffectiveness of counsel must still be proved, including proof of specific errors by trial counsel. *Id.* at 666, 104 S.Ct. at 2051.

■ Similarly, the court in *Soto Hernandez* concluded on the facts before it that neither lack of communication nor alleged conflict[8] had been established to allow pre-

---

**8.** Even were I to disregard the procedural bar to petitioner's "actual conflict" theory, the record does not establish presumptive ineffectiveness on that ground. To show ineffective assistance on the basis of actual conflict, petitioner must show that his counsel actively represented conflicting

sumptive ineffectiveness despite the defendant's claim that his lawyer had previously represented a third party who allegedly forced defendant into heroine trafficking and, as a result, that defendant did not trust him.

Likewise, *Brown v. Craven* is clearly distinguishable from the facts of this case. There the defendant filed four motions to have a different attorney appointed to represent him. The motions were summarily denied with no real inquiry into the cause of dissatisfaction. The defendant continued his objections in open court. The Ninth Circuit concluded that he was so "embroiled in irreconcilable conflict" that requiring him to go to trial with that attorney deprived him of effective assistance of counsel. 424 F.2d at 1170. In this case, neither petitioner nor Ms. Jordan ever informed the trial court that, after the trial court appointed separate counsel in an effort to resolve the conflict, problems either arose or continued with Ms. Jordan's continued representation. Neither petitioner nor Ms. Jordan requested new counsel or otherwise afforded the trial court an opportunity to resolve any difficulty with her continued representation, and, of course, no factual argument has been made that Ms. Jordan provided ineffective assistance.

Significantly, this is not a case like *Brown* where there was no communication with counsel "in any manner whatsoever." 424 F.2d at 1169. Here the trial record shows that Ms. Jordan clearly communicated the plea offer to petitioner and that he declined to say anything, whether by way of objection or not. The same record also indicates that he did not feel any need to comply with Ms. Jordan's request because she thought there was a good chance he would lose. Later, he communicated his desire not to participate in the trial and the reasons why through counsel. In other words, the record demonstrates communication rather than its complete absence.

In the end, petitioner's case rests on the assertion that an alleged loss of confidence in Ms. Jordan prevented him from accepting the plea offer. Once advised of the implications of the offer and of his counsel's recommendation, petitioner was free to accept or reject the offer. *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). That hindsight now proves his choice improvident cannot be decisive. The circumstances of his choice, as shown on the record, do not demonstrate a breakdown of the adversarial system but rather varying reasons for his decision which the trial court resolved on the basis of "the totality of the circumstances" against petitioner's claims. Accordingly, I reject the Magistrate Judge's conclusion that, contrary to the state trial court's findings and conclusions, the petitioner has demonstrated a violation of his Sixth Amendment right to effective assistance of counsel.

It is therefore ordered as follows:

1. The respondents' objection to the Magistrate Judge's Recommendation that the Petition be granted on the basis of ineffective assistance of counsel is sustained.

2. The balance of the Recommendation is accepted.

3. The Petition shall be dismissed.

4. Each party shall pay his own costs.

---

interests which adversely affected the lawyer's performance. *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). There was no such showing in *Soto Hernandez,* and there likewise can be no such showing here as any potential conflict of interest was resolved by appointment of separate counsel for the habitual criminal phase of petitioner's trial.

The conflict of interest issue was resolved by the trial court consistent with the requirements of *United States v. Cook,* 45 F.3d 388 (10th Cir. 1995). When the issue was raised, the trial court adequately inquired into the circumstances and

resolved the conflict to avoid a presumptive ineffective assistance.

If no timely objection is made, then the defendant must show that his counsel actively represented a conflicting interest and that conflict adversely affected the lawyer's performance. *United States v. Cook,* 45 F.3d at 393, citing *Cuyler v. Sullivan.* The potentially ambiguous response of petitioner was clarified by his counsel's confirmation that the resolution of the potential conflict was acceptable, and petitioner has not shown actual conflict or how that has adversely affected Ms. Jordan's performance as required by *Cuyler* and *Cook.*