The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Brian M. CROSS, Defendant–Appellant.

No. 02CA0151.

Colorado Court of Appeals,
Div. V.

March 11, 2004.

As Modified on Denial of Rehearing
Dec. 9, 2004.

Certiorari Granted June 6, 2005.

Ken Salazar, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Brian M. Cross, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of felony harassment by stalking, § 18–9–111(4)(b)(I), (III), C.R.S.2003, and one count of misdemeanor harassment, § 18–9–111(1)(c), C.R.S.2003. We reverse and remand for a new trial.

From mid-April until June 2001, defendant went to a shopping center almost daily and spent several hours sitting on benches near, and circling, a kiosk which was the victim's place of employment. Initially both the victim and employees of an adjacent store were concerned about defendant's conduct and were unsure as to his target. Ultimately, however, it became apparent that the victim was the object of defendant's attention.

The victim felt threatened by defendant's presence and reported his activities to the mall's security personnel. She began using different doors to enter and leave the mall, had her husband drive her to and from work, and had her supervisor modify her work schedule so that she would not leave work alone.

On one occasion, defendant approached the kiosk, tapped on it, smiled at the victim, and then returned to the benches and watched the victim for the remaining two and one-half hours of her shift. Later that day the victim and her family went to an evening church service they regularly attended. Defendant was present at the church and, again, appeared to be watching her. Shortly after the victim's husband joined her, defendant left. Defendant continued to watch the victim at work over the next few days. Defendant was soon arrested for a parole violation arising out of a previous harassment by stalking conviction (the 1999 conviction) and was charged with the offenses in this case.

Harassment by stalking is a class 5 felony which is elevated to a class 4 felony if there has been a previous conviction of a similar offense within the preceding seven years. See § 18–9–111(5)(a.5), C.R.S.2003. The 1999 conviction was such a conviction.

The prosecution filed a notice of intent to admit the 1999 conviction, together with other similar conduct, pursuant to CRE 404(b). The trial court rejected the request on the grounds that the evidence was not probative and was "unfairly highly prejudicial." However, following the trial court's ruling, the prosecution indicated that it would seek to introduce the 1999 conviction as an element of harassment by stalking, the class 4 felony.

In pretrial motions, defendant challenged the use of the 1999 conviction, asserting he received ineffective assistance of counsel in the prior case. Because he was represented by the public defender's office in both instances, he requested appointment of conflict-free counsel. The trial court denied the motion, concluding there was no conflict, and also denied the challenge to the 1999 conviction.

Defendant also requested that the trial court bifurcate the two counts of harassment by stalking so that evidence of the 1999 conviction would not be placed before the jury considering the class 5 felony. In the alternative, he offered to stipulate to the 1999 conviction if he were convicted of the substantive charges. The trial court denied the motion and the offer.

At the time the evidence was admitted, the trial court admonished the jury that the 1999

conviction was admitted for the sole purpose of establishing that defendant had been previously convicted as an element of harassment by stalking and not for any other purpose.

Defendant did not testify, but presented evidence that he had two jobs, that he visited the mall in between jobs to "kill time," and that he played drums in the church band which was performing on the evening in question.

Defendant was convicted of all charges. The trial court then found defendant guilty of three habitual criminal counts, one of which alleged the 1999 conviction. Defendant was sentenced to twenty-four years in the Department of Corrections and five years of mandatory parole.

### I.

■ Defendant argues the trial court erred in admitting evidence of the 1999 conviction and instructing the jury that it was an element of harassment by stalking, § 18–9–111(4)(b)(I), (III), a class 4 felony. We agree.

Section 18–9–111(5), C.R.S.2003, the penalty provision for harassment by stalking, states:

Where a person commits stalking under paragraph (b) of subsection (4) of this section [both felony counts here], the following shall apply:

(a) A person commits a class 5 felony for a first offense.

(a.5) For a second or subsequent offense, if such offense occurs within seven years of the date of a prior offense for which such person was convicted, the offender commits a class 4 felony.

This language establishes a sentencing enhancer, and not a substantive offense, because: (1) the defendant may be convicted of the underlying offense without any proof regarding the sentencing enhancer; and (2) the sentence enhancement provision increases the potential punishment. *Vega v. People,* 893 P.2d 107 (Colo.1995). Where prior convictions are not part of the substantive offense, evidence of those convictions is withheld from the jury until disposition has been made of the substantive count. *See Heinze v. People,* 127 Colo. 54, 253 P.2d 596 (1953).

In *Heinze,* the supreme court reversed a conviction for driving under the influence of alcohol. There, as here, the statute provided that upon a second or subsequent conviction of driving under the influence, the penalty was enhanced. The prosecution was permitted to introduce the defendant's prior conviction in its case-in-chief during the trial on the substantive charge. In reversing the conviction, the court stated:

It is one thing to charge a defendant by different counts in an information of having committed more than one offense in related transactions of similar nature, but quite another situation is presented where the information in one count charges the defendant not only of the substantive offense to be proven, but in addition thereto, charges that the defendant has been convicted of a prior offense.

The matter of conviction of the second, third or more, similar offenses is something to be established in connection with any penalty to be imposed after the conviction of the substantive offense on trial. The use of the proof of convictions of second or more offenses cannot obtain until guilt of the substantive offense on trial is established.

*Heinze v. People, supra,* 127 Colo. at 58–59, 253 P.2d at 599. The supreme court reversed in *Heinze* even though the defendant subsequently testified and readily admitted the prior offenses.

We recognize that mandatory sentence enhancers, with the exception of prior convictions, must be proved to the substantive offense fact finder, here the jury, beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We also recognize that a prior conviction may be an element of an offense which must be proved beyond a reasonable doubt to the substantive offense fact finder. *See* § 18–12–108, C.R.S.2003 (possession of weapons by previous offenders). In addition, sentence enhancers are frequently contained in separate sections of the statutes. *See, e.g.,* § 18–1.3–401(1)(a)(VI), (9), (10),

C.R.S.2003 (habitual criminal, mandatory sentence enhancers, and extraordinary risk crimes).

██ However, because the sentence enhancer is a prior conviction and the statute does not prescribe a burden of proof, the prosecution is only required to prove the prior conviction by a preponderance of the evidence, and it may be properly determined by the trial court sitting without a jury. *People v. Whitley*, 998 P.2d 31 (Colo.App. 1999).

Therefore, the trial court erred in admitting the 1999 conviction into evidence as an element of the harassment by stalking offenses.

Nor can we conclude that the error was harmless. Here, in denying admission of the 1999 conviction and other prior bad act evidence under CRE 404(b), the trial court found that the evidence was "unfairly highly prejudicial." In addition, after defendant offered to stipulate to the 1999 conviction if he were convicted of the relevant substantive offenses, the evidence was of little or no probative value as to any issue in dispute.

Therefore, defendant's conviction must be reversed, and the case is remanded for a new trial.

## II.

Because it is potentially dispositive of the matter, we address defendant's assertion that there is insufficient evidence to support his convictions. We disagree.

██ When the sufficiency of evidence is challenged on appeal, the reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. White*, 55 P.3d 220 (Colo.App.2002).

### A.

██ Defendant argues that the evidence does not support a finding of a "credible threat" for the purposes of § 18–9–111(4)(b)(I). We disagree.

Section § 18–9–111(4)(b)(I) provides that:

A person commits stalking if ... such person knowingly ... [m]akes a credible threat to another person and, in connection with such threat, repeatedly follows, approaches, contacts, or places under surveillance that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship.

"Credible threat" is defined as follows:

[A] threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety or the safety of his or her immediate family or of someone with whom the person has or has had a continuing relationship. Such threat need not be directly expressed if the totality of the conduct would cause a reasonable person such fear.

Section 18–9–111(4)(c)(II), C.R.S.2003. Acts " 'in connection with' such threat" are those occurring before, during, or after the credible threat that further the threat or have continuity of purpose. Section 18–9–111(4)(c)(I), C.R.S.2003.

Here, there is evidence, if believed, of a credible threat as defined by the statute. Defendant repeatedly stared at and daily observed the victim at work for hours at a time over a period of several weeks. The evidence showed that defendant was only present at the mall when the victim was present, despite changes in her schedule. He approached and made eye contact with her. He discovered where she attended church and began to follow her there as well.

We are not aware of any authority holding that the credible threat must be separate from and independent of the harassing conduct or that it must be verbal. The evidence here is sufficient to support a finding by a reasonable jury beyond a reasonable doubt of a credible threat that would put a reasonable person in fear of his or her safety. *See* § 18–9–111(4)(b)(I), (c)(I)-(II).

## B.

Defendant also argues the evidence is insufficient to find "serious emotional distress." We disagree.

Section 18–9–111(4)(b)(III) provides that a person commits stalking if the person:

[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress. For purposes of this subparagraph (III), a victim need not show that he or she received professional treatment or counseling to show that he or she suffered serious emotional distress.

Here, the victim testified that defendant's behavior caused her to change her work schedule, take days off from work, and feel unsafe; she was nervous and had trouble sleeping; and she felt she was constantly being watched by defendant. The statute is clear that serious emotional distress need not be such as would compel professional treatment or a breakdown. The evidence thus is sufficient to support a finding beyond a reasonable doubt of serious emotional distress. *See People v. Sullivan,* 53 P.3d 1181 (Colo.App.2002)(victim's testimony sufficient to support finding of serious emotional distress).

## C.

We also disagree with defendant's argument that there was insufficient evidence to support his conviction under § 18–9–111(1)(c).

Section 18–9–111(1)(c) provides: "A person commits harassment if, with intent to harass, annoy, or alarm another person, he or she ... [f]ollows a person in or about a public place."

Defendant offered testimony that he had joined the church band and arrived at the church before the victim on the evening in question to attend band practice, and that he did not follow the victim to church. However, there is competent record evidence to support a finding beyond a reasonable doubt that defendant discovered the victim's church membership and attendance pattern after he began watching her at the shopping center. In addition, the shopping mall was a public place, and defendant's conduct there would also support a conviction under this section.

Therefore, there was sufficient evidence to support the jury's inferences. *See People v. Gonzales,* 666 P.2d 123, 128 (Colo.1983).

## III.

Again, because it is potentially dispositive of the matter, we address defendant's contention that § 18–9–111(4)(b)(I) and (III) are unconstitutionally vague and overbroad. We are not persuaded.

Statutes are presumed to be constitutional, and the burden of proving unconstitutionality beyond a reasonable doubt is on the party challenging the statute. *People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994).

A statute is unconstitutionally overbroad if it proscribes constitutionally protected speech. Such a statute is invalid unless a limiting construction narrows it to constitutionally adequate parameters. *People v. Hickman,* 988 P.2d 628 (Colo.1999).

Vague laws are unconstitutional because they offend due process by failing to give fair notice of the conduct prohibited and by not supplying adequate standards to prevent arbitrary or discriminatory enforcement. If the prohibitions are not clearly defined or are reasonably susceptible of more than one interpretation by a person of common intelligence, a law may be void for vagueness. *People v. Hickman, supra.*

## A.

Defendant argues that the definition of "credible threat" for purposes of § 18–9–111(4)(b)(I) is vague and overbroad. We disagree.

The Colorado Supreme Court addressed a similar issue in *People v. Baer,* 973 P.2d 1225 (Colo.1999), in which "credible threat" as used in Colo. Sess. Laws 1994, ch. 324, § 18–9–111(4)(a)(II) at 2018, was challenged as overbroad and vague. The statute then de-

fined "credible threat" to mean "a threat or physical action that would cause a reasonable person to be in fear for the person's life or safety or the safety of his or her immediate family." Colo. Sess. Laws 1997, ch. 264, § 18–9–111(4)(b)(I) at 1540. The *Baer* court held that the statute does not burden all communications related to a threat, but only those which further, promote, or advance a credible threat.

With current amendments, the statute now adds "repeated conduct" to the definition of a credible threat and indicates that the threat need not be directly expressed if the totality of the conduct would cause reasonable fear. Section 18–9–111(4)(c)(II). However, whether the threat is express or implied, it must be sufficient to cause a reasonable person to be in fear of his or her life or safety.

Furthermore, the statute only proscribes that conduct which, by threat, physical action, or repeated conduct, serves to further, promote, or advance a credible threat. We therefore conclude that the current definition of "credible threat" does not substantially burden protected speech. *See People v. Hickman, supra.*

In addition, we conclude that the statute is sufficiently specific to provide sufficient guidance to individuals seeking to comply with the law and to law enforcement officers enforcing the statute. The prosecution must prove, as relevant here, the defendant made a credible threat to another person and, in connection with such threat, repeatedly followed, approached, contacted, or placed that person under surveillance. These requirements sufficiently define the conduct prohibited under § 18–9–111(4)(b)(I) so that persons may conform their actions to the statute, and they present a standard for determining whether enforcement of the statute has been arbitrary and discriminatory. Hence, we conclude that § 18–9–111(4)(b)(I) is not unconstitutionally vague. *See People v. Baer, supra.*

### B.

██ Defendant argues that because § 18–9–111, C.R.S.2003, does not provide a definition of "serious emotional distress," the meaning of the term is subjective, and therefore, § 18–9–111(4)(b)(III) is unconstitutionally vague. Again, we disagree.

Section 18–9–111(4)(b)(III) requires the state to prove that prohibited conduct would cause a "reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress."

The concept of reasonableness is an integral ingredient of the objective measure of conduct, *see People v. Randall*, 711 P.2d 689 (Colo.1985), and by its plain language, the statute requires proof of both subjective and objective components of serious emotional distress. Because the statute sets forth an identifiable objective standard for measuring the proscribed conduct, it is not unconstitutionally vague. *See People v. Randall, supra; People v. Yascavage,* 80 P.3d 899 (Colo. App.2003)(*cert. granted* Dec. 1, 2003, 2003 WL 22838731).

We also disagree with defendant's argument that § 18–9–111(4)(b)(III) is unconstitutionally overbroad because it requires only knowledge of, rather than intent to cause, serious emotional distress.

The General Assembly has recognized that stalking is a serious problem in this state and nationwide, stating:

> A stalker will often maintain strong, unshakable, and irrational emotional feelings for his or her victim, and may likewise believe that the victim either returns these feelings of affection or will do so if the stalker is persistent enough. Further, the stalker often maintains this belief, despite a trivial or nonexistent basis for it and despite rejection, lack of reciprocation, efforts to restrict or avoid the stalker, and other facts that conflict with this belief.

Section 18–9–111(4)(a), C.R.S.2003.

Because stalkers are often acting out delusional personal beliefs, requiring a stalker specifically to intend the result of his or her actions might well render the statute ineffectual. *See* § 18–9–111(4)(a). Moreover, the statute requires that the perpetrator be "aware that his conduct [was] practically certain to cause," and did cause, serious emotional distress. Section 18–1–501(6), C.R.S. 2003. That requirement is sufficient to pass

constitutional muster on a challenge that the statute is void for overbreadth.

Hence, we conclude that § 18–9–111(4)(b)(III) is neither unconstitutionally vague nor overbroad.

### IV.

Because it may arise on remand, we next address defendant's argument that the trial court did not instruct the jury properly on the elements of the two harassment by stalking counts. We agree with defendant as to one, but not the other.

### A.

■ To convict defendant of credible threat harassment by stalking under § 18–9–111(4)(b)(I), the jury was instructed it must find:

1. That the defendant,

2. In the State of Colorado, at or about the date and place charged

3. knowingly, made a credible threat to another person and,

4. in connection with such threat, knowingly, repeatedly followed, approached, contacted, or placed under surveillance that person

5. and the defendant was convicted of an offense of Harassment—Stalking within seven years prior to this offense.

Contrary to defendant's argument, we conclude that this instruction was a correct and complete statement of the law. A division of this court in *People v. Suazo*, 87 P.3d 124 (Colo.App.2003), held that it was reversible error to give an instruction as to harassment by stalking, § 18–9–111(4)(b)(I), which did not advise the jury that "knowingly" applied to both the credible threat and to the conduct in connection with the threat. We are persuaded by the rationale and holding of that case.

Here, however, the instruction advised the jury that "knowingly" applies to that conduct. Therefore, the instruction was a correct statement of the law as to credible threat harassment by stalking and should be given on retrial if that charge is again submitted to the jury, except that, for reasons

previously stated, element five should be deleted.

### B.

■ However, to convict defendant of emotional distress harassment by stalking under § 18–9–111(4)(b)(III), the jury was instructed it must find:

1. That the defendant,

2. In the State of Colorado, at or about the date and place charged

3. knowingly, repeatedly followed, approached, contacted, placed under surveillance, or made any communication with another person

4. in a manner that would cause a reasonable person to suffer serious emotional distress

5. and caused that person to suffer serious emotional distress

6. and the defendant was convicted of the offense of Harassment by Stalking—Emotional Distress within seven years prior to this offense.

Defendant argues that the instruction is faulty because it does not advise the jury that "knowingly" applies to all the elements, including "knowing" that his conduct would reasonably cause serious emotional distress and "knowing" that his conduct caused serious emotional distress. These elements relate not to conduct but to the result of the conduct, as does the definition of "knowingly."

Section 18–1–501(6) defines "knowingly and willfully" as follows:

All offenses defined in this code in which the mental culpability requirement is expressed as "knowingly" or "willfully" are declared to be general intent crimes. A person acts "knowingly" or "willfully" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" or "willfully", with respect to a result of his con-

duct, when he is aware that his conduct is practically certain to cause the result.

(Emphasis added.)

In other words, defendant had to be aware that his conduct was practically certain to cause, and did cause, "serious emotional distress." The jury was properly instructed on the definition of "knowingly," but was not specifically informed as to the application of that definition to the elements of the offense. The holding and rationale of *People v. Suazo, supra,* are equally applicable here, and thus the instruction was defective and should not be given on retrial.

The prosecution argues that the General Assembly intended that "knowingly" apply only to the conduct, that is, that defendant knowingly "repeatedly followed, approached, contacted, placed under surveillance, or made any communication with another person." That argument is belied by the general rule that the mental state element applies to all elements of the offense, *Gorman v. People,* 19 P.3d 662 (Colo.2000), and by the definition of "knowingly" itself.

Therefore, on retrial, if the same charge is submitted to the jury, the jury should be instructed:

1. That the defendant,
2. In the State of Colorado, at or about the date and place charged
3. knowingly, repeatedly followed, approached, contacted, placed under surveillance, or made any communication with another person
4. in a manner such that he was aware that his conduct was practically certain to cause a reasonable person to suffer serious emotional distress
5. and caused that person to suffer serious emotional distress.

Based on our previous holding, element six in the original instruction given should not be given.

## V.

Defendant also argues that the trial court erred in not appointing conflict-free counsel to challenge the his 1999 conviction. Because the issue may arise on remand, we will address the issue. We agree with defendant.

Here, the 1999 conviction was used as a sentence enhancer under § 18–9–111(5)(a.5), elevating a class 5 felony to a class 4 felony. In addition, it was used as a prior felony conviction for the purposes of the habitual criminal sentencing pursuant to § 18–1.3–1201, C.R.S.2003. The 1999 conviction is separately germane under § 18-9-111(5)(a.5).

Defendant filed a motion for appointment of conflict-free counsel to challenge the 1999 conviction and represented that he intended to collaterally attack that conviction and would allege, among other things, ineffective assistance of plea counsel. Such a motion would have been timely.

Defendant was represented by a deputy public defender in this matter. Plea counsel for the 1999 conviction was also a deputy public defender from an adjacent regional office. Defendant's counsel represented that he had a close professional relationship with defendant's plea counsel for the 1999 conviction.

At the hearing on defendant's motion for appointment of conflict-free counsel, the trial court, while concluding there was no conflict, treated the motion as a motion to set aside the 1999 conviction. Throughout the hearing, defendant's counsel argued that he was not there to challenge the 1999 conviction, was not prepared to introduce evidence in that regard, and was merely asking for appointment of conflict-free counsel to challenge the 1999 conviction.

Defendant's counsel did present a copy of a minute order entered by the 1999 conviction court, which stated, in pertinent part:

> The defendant filed a motion to withdraw his plea of guilty and because he was alleging ineffective assistance of counsel at the plea hearing, his attorney, the public defender [counsel's name] was permitted to withdraw and [alternate defense counsel] attorney [counsel's name] was appointed to represent him.

Defendant's counsel represented, without reference to that record, that the motion to withdraw the plea had been denied, and de-

fendant proceeded with the plea agreement and did not seek to withdraw the plea.

 A criminal defendant has a constitutional right to the assistance of counsel, which includes the right to conflict-free counsel. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Martinez,* 869 P.2d 519 (Colo.1994). In determining whether a conflict exists, the court should shape a remedy that assures fairness to the parties and the integrity of the judicial process. *People v. Romero,* 767 P.2d 782 (Colo.App. 1988).

The Rules of Professional Conduct include a rule of imputed disqualification that extends an attorney's disqualification to the other members of his or her law firm. This rule applies to public law firms, such as a public defender's office. Colo. RPC 1.10; *McCall v. Dist. Court,* 783 P.2d 1223, 1228 (Colo.1989)(construing DR 5–105(D) and concluding "that requiring a member of the appellate division to argue that a local deputy public defender rendered ineffective assistance of counsel would have an inherently deleterious effect on relationships within the public defender system and would be destructive of an office upon which the criminal justice system relies to provide competent legal services to indigent defendants"); *see also Rodriguez v. Dist. Court,* 719 P.2d 699 (Colo.1986)(the local public defender's conflict would be imputed to the remaining staff within the attorney's own local public defender office, requiring that other members of that office also be disqualified).

In *People v. Romero, supra,* a trial court appointed private counsel to represent the defendant in any challenge to the defendant's previous convictions, but determined that the public defender's office would continue to represent the defendant at the trial on the merits of the new criminal charges. A division of this court found no abuse of discretion in shaping a remedy by appointing private counsel to represent the defendant with respect to that portion of proceedings where a conflict might have arisen and retaining the public defender as counsel on the new charges. *People v. Romero, supra.*

Upon remand the trial court should appoint conflict-free counsel to represent defen-

dant in pursuing his postconviction remedies with respect to the 1999 conviction.

## VI.

 And finally, defendant argues that his 1999 conviction cannot be used twice to enhance or aggravate his sentence on the grounds of double jeopardy. We disagree.

Here, the 1999 conviction was used as a sentence enhancer under § 18–9–111(5)(a.5), elevating a class 5 felony to a class 4 felony. In addition, it was used as a prior felony conviction for the purposes of the habitual criminal sentencing pursuant to § 18–1.3–1201.

 The state and federal Double Jeopardy Clauses protect individuals against multiple punishments for the same offense. *Hudson v. United States,* 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997); *Deutschendorf v. People,* 920 P.2d 53 (Colo.1996).

Defendant's sentence does not violate double jeopardy. Sentence enhancements based on prior crimes are neither new jeopardy nor an additional penalty for the earlier crime; rather, they are a stiffened penalty for the latest crime, which is considered to be an aggravated offense because of the defendant's repetitive criminal conduct. *See People v. Bowring,* 902 P.2d 911 (Colo.App.1995).

Accordingly, the judgment is reversed, and the case is remanded to the trial court for a new trial.

Judge CASEBOLT and Judge PICCONE concur.