UNITED STATES of America, Plaintiff–Appellee,

v.

Hector SOTO HERNANDEZ, Defendant–Appellant.

No. 86–1827.

United States Court of Appeals, Tenth Circuit.

June 24, 1988.

Tova Indritz, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

David N. Williams, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., and Mark D. Jarmie, Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Before LOGAN, ANDERSON, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Hector Soto Hernandez was convicted of two counts each of possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. Soto argues that he was denied his sixth amendment right to effective assistance of counsel and he seeks a new trial on this ground. The district court denied the defendant's new trial motion. We affirm.

Soto was arrested on November 10, 1985, and charged in New Mexico state court with trafficking in heroin and conspiracy. After Soto's arrest, he was informed that he was not eligible for appointed counsel in the New Mexico system. His fiancee, Kelly Edge, sought to engage an attorney for Soto and went to Mexico to see Astolpho Perez, for whom both she and Soto had worked, about money she claimed he owed her. She planned to use the money Perez owed her to procure an attorney's services. Perez did not give Edge any money, but when she told him that Soto needed a lawyer, he referred her to Chris Lackmann, who had previously represented Perez in a child custody matter. Lackmann was hired. Edge originally thought that Perez was going to pay for Soto's representation.

He did not, and Edge paid Lackmann $6,000. The state charges were subsequently dismissed and a federal grand jury indicted Soto on charges of possession with intent to distribute and distribution of heroin. ·

Soto's sole defense was that any illegal acts he may have committed were the product of duress. Soto initially told Lackmann that the source of his duress was someone named Ruben, but he eventually told him that it was Perez who had coerced him to participate in heroin trafficking by threatening both Soto and his family. Because he had represented Perez in the custody suit, Lackmann sought outside guidance concerning whether there was a conflict of interest. He concluded that there was none. He also informed Soto of his prior representation of Perez and offered to withdraw. Soto indicated, however, that he wanted Lackmann to continue to serve as his attorney. Soto now claims that, because he had been denied appointed counsel in the New Mexico state system, he believed he was not entitled to appointed counsel in federal court. He believed that his choice was between Lackmann and no counsel at all, and he chose to stay with Lackmann.

Even though he told Lackmann before trial that Perez had coerced him, when called upon to testify at trial Soto again named Ruben as the one who had threatened him and his family. Soto also testified that he knew of Ruben's violent acts against others and he suspected that Ruben was responsible for an "accident" involving Soto's father. Edge, who was the only other defense witness, testified that Perez had threatened her and the defendant. Soto was convicted of all counts in the indictment.

Soto, through newly appointed counsel, filed a motion for a new trial on the ground that his trial counsel was ineffective. The trial court denied the motion as untimely. Soto appealed to this court and requested that the court remand the matter for the limited purpose of an evidentiary hearing on the new trial motion. This court granted the request and an evidentiary hearing was held on November 21, 1986.

At the hearing, Soto testified that he did not fully cooperate with his attorney because he did not trust him. Among his reasons for this lack of trust were his fear of Perez and his concern that Lackmann was relaying information to Perez that he obtained from Soto in the course of his representation.[1] He also contends that because he thought that Perez was going to pay Lackmann's legal fees, he believed that Lackmann was representing Perez's interests rather than his own. The district court denied the new trial motion on the merits and Soto appeals.

Soto's ineffective assistance claim is three-fold. First, he alleges that his lack of trust in his counsel, precluded counsel from providing effective assistance. Second, he contends that his trial counsel was operating under an actual conflict of interest that denied Soto the representation he is guaranteed under the sixth amendment. Third, he argues that even if his counsel was not *per se* ineffective either because of a lack of communication or an actual conflict of interest, Lackmann's performance was constitutionally deficient.

## I.

Soto's first argument arises out of the unusual manner in which his relationship with his counsel, Lackmann, was initiated. He contends that because he perceived that Lackmann was acting as an "agent" for Perez, he did not communicate as fully with Lackmann as he could have. He ar-

---

1. Soto argues that in part, his concern was based on the relationship between Lackmann and another attorney who worked in the same building, Timothy Woolston. The attorneys had worked together on some cases in the past and initially, they collaborated on the present case. Woolston was then representing Perez on an unrelated matter, however, and he withdrew from this case when he realized that there were bad feelings between Perez and Soto's fiancee, Edge, over money. Because Soto did not name Perez as the source of his duress until *after* Woolston had withdrawn, Woolston was unaware of any possible conflict between Soto and Perez while he represented them both. After his withdrawal, Woolston had no involvement in Soto's case and did not discuss it at all with Lackmann.

gues that his perception made him so distrustful of his attorney that an effective attorney/client relationship was impossible.

■ In *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed. 2d 657 (1984), the Supreme Court held that in certain circumstances a presumption of ineffectiveness arises making it unnecessary to examine actual performance of counsel. A complete breakdown in communication between an attorney and client may give rise to such a presumption. For example, the Ninth Circuit has held that a breakdown in communication between an attorney and his or her client can be severe enough to prevent even the most able counsel from providing effective assistance. *See, e.g., United States v. Williams,* 594 F.2d 1258, 1259–61 (9th Cir.1979); *Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir. 1970).

In *Brown,* a dispute between a first-degree murder defendant and his appointed counsel arose almost immediately after the attorney's appointment. 424 F.2d at 1169. As a result of that dispute, "Brown was forced into trial with the assistance of a particular lawyer with whom he was dissatisfied, with whom he would not cooperate, and with whom he would not, *in any manner whatsoever,* communicate." *Id.* (emphasis added). The defendant was convicted of second-degree murder and challenged his conviction on sixth amendment grounds. The Ninth Circuit held that one who "undergoe[s] a trial with the assistance of an attorney with whom he has become embroiled in an irreconcilable conflict" is deprived of the effective assistance of counsel. *Id.* at 1170. Similarly, in *Williams,* where the attorney/client "relationship had been a stormy one with quarrels, bad language, threats, and counterthreats," 594 F.2d at 1260, the court found that the irreconcilable conflict frustrated the attorney's ability to provide the effective assistance of counsel that the sixth amendment guarantees. *Id.*

■ We are not faced here with the sort of irreconcilable conflict that marked the attorney/client relationships in *Brown* and *Williams.* In fact, the relationship between Soto and Lackmann was marked by significant communication. The district court found that whatever the level of Soto's mistrust of Lackmann, it "did not result in a lack of communication between Lackmann and defendant as to the essentials of defendant's defense, nor did it lead to a breakdown of the attorney/client relationship." We are satisfied that any lack of communication was not such that it rendered Lackmann's assistance *per se* ineffective.

## II.

■ Soto also claims that Lackmann operated under an actual conflict of interest while representing Soto at trial. The sixth amendment entitles a criminal defendant to an attorney free of interests that actually conflict with those of the accused. *See Holloway v. Arkansas,* 435 U.S. 475, 481, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978). This right is not limited to cases involving joint representation of codefendants at a single trial, but extends to any situation in which a defendant's counsel owes conflicting duties to that defendant and some other third person. *Wood v. Georgia,* 450 U.S. 261, 268–72, 101 S.Ct. 1097, 1101–1103, 67 L.Ed.2d 220 (1981); *United States v. Winkle,* 722 F.2d 605, 609–10 (10th Cir.1983). To prevail on an ineffective assistance claim of this variety "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Once an actual conflict and an adverse effect are shown, an accused need not show prejudice to receive relief. *Id.* at 349–50, 100 S.Ct. at 1718–19; *Winkle,* 722 F.2d at 610. Soto contends that Lackmann's previous representation of Perez in a child custody case created a conflict with Lackmann's representation of Soto in the present matter.

■ While we review the district court's ultimate determination of whether an actual conflict existed *de novo,* the court's resolution of the underlying facts giving rise to its conclusion is subject to a clearly errone-

ous standard of review. *Cuyler*, 446 U.S. at 342, 100 S.Ct. at 1714. We agree with the district court's determination that no actual conflict existed.

In *Winkle*, this court recognized that an attorney's previous representation of someone other than the defendant may give rise to an actual conflict for the attorney. 722 F.2d at 610. In that case, however, the preexisting attorney/client relationship was between a defense attorney and someone who was subsequently the principal government witness in a case against the attorney's current client. Moreover, the attorney had represented the witness in "litigation with a factual relationship to some issues" in the case involving the attorney's present client. *Id.*

The case before us does not present such a circumstance. The litigation in which Lackmann served as counsel for Perez is totally unrelated to Lackmann's representation of Soto. A defendant who argues that an actual conflict prevented his attorney from providing effective assistance must "show[ ] that his counsel *actively* represented conflicting interests." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719 (emphasis added); *accord Hernandez v. Mondragon*, 824 F.2d 825, 827 (10th Cir.1987). Until he does so, "he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719; *see also Crisp v. Duckworth*, 743 F.2d 580, 588 (7th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1221, 84 L.Ed.2d 361 (1985).

The district court found that even though Lackmann represented Perez in a child custody case in 1981 and 1982, "there is no evidence that an attorney/client relationship existed between Lackmann and Perez at the time of Lackmann's representation of defendant, nor that Lackmann's prior representation of Perez was in any way connected to this case." These findings are not clearly erroneous. Based on these facts, the court concluded that Lackmann faced no actual conflict of interest in pursuing Soto's defense. We agree and affirm

the district court's determination that Soto has failed to establish the constitutional predicate for his claim of ineffective assistance based on an actual conflict of interest.[2]

## III.

Soto's next claim is that Lackmann's actual performance was constitutionally deficient. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). To obtain relief on an ineffective assistance claim a defendant must satisfy a two-tiered test. First, he must show that counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Second, he must show that the deficient performance was prejudicial such that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Attempting to satisfy the first prong of the *Strickland* standard, Soto contends that Lackmann seriously erred in failing to (1) properly investigate Soto's defense, (2) call witnesses who could corroborate Soto's defense of duress, and (3) vigorously present Soto's defense at trial. Recognizing that "[j]udicial scrutiny of counsel's performance must be highly deferential," *Id.* at 689, 104 S.Ct. at 2065, we examine each of these contentions.

An attorney must make reasonable investigations or make reasonable decisions that particular investigations are unnecessary. *Id.* at 691, 104 S.Ct. at 2066; *Coleman v. Brown*, 802 F.2d 1227, 1233 (10th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). "The reasonableness of an attorney's decision not to conduct an investigation is directly related to the information the defendant has supplied." *Coleman*, 802 F.2d at 1233. In the present case, Soto initially told Lack-

---

**2.** Soto also contends that Lackmann's status as a codefendant with Perez in a civil suit indicates the attorney was acting with divided loyalties.

Soto fails to demonstrate, however, how Lackmann's status supports a finding that he actively represented conflicting interests.

mann that someone named Ruben was the source of Soto's duress. Based on that assertion, Lackmann went to Mexico in search of witnesses who could corroborate Soto's information regarding the threats communicated to Soto. Lackmann believed that the most important corroborating witnesses would be Edge and Soto's ex-wife and children because, according to the information his client provided, they alone had personal knowledge of the threats. Lackmann also attempted to locate other potential witnesses in Mexico whose names he was given by Soto. Lackmann was unable to contact those individuals. These facts demonstrate that Lackmann's investigation did not fall below the threshold of reasonable competency established by *Strickland*.

Soto next argues that Lackmann's failure to call Soto's brothers as witnesses amounted to ineffective assistance. We disagree. The trial court found that Lackmann failed to interview and call the defendant's brothers as witnesses because it was Lackmann's understanding, based on his interviews with Soto, that they had no personal knowledge of any threats or actions by either Ruben or Perez that would be relevant to Soto's duress defense. That Soto's current counsel has discovered that these witnesses may have been in a position to corroborate Soto's assertions does not render Lackman's failure to do so unreasonable. *Cf. Myrick v. Maschner*, 799 F.2d 642, 647 (10th Cir.1986) ("the blessing of perfect hindsight frequently discloses avenues which should have been explored"). Lackmann did call Edge as a witness and her testimony would have corroborated Soto's had Soto testified, as he indicated to Lackmann that he would, that Perez was the source of his duress rather than Ruben. Moreover, the trial court found that Lackmann attempted to obtain the testimony, through immigration channels, of those members of Soto's family who he believed had personal knowledge of the threats against the defendant; he was unable, however, to procure their attendance at trial. We hold that Lackmann's failure to call Soto's brothers as witnesses did not fall below the standard of reasonable competence.

Finally, Soto contends that Lackmann's presentation of the duress defense at trial was constitutionally deficient. The most useful way to judge counsel's performance during the course of a trial is by a careful review of the record. *United States v. Andrews*, 790 F.2d 803, 814 (10th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987). The record in this case supports the trial court's determination that Lackmann "was fully prepared to try the case, cross-examined government witnesses on a number of subjects and pursued defendant's interests throughout the proceedings." He put the two people on the witness stand who were, in his view, best able to persuasively present the duress defense: Edge and Soto. Lackmann was surprised when Soto reverted to his original contention that someone named Ruben was the source of his duress. Because Soto has not demonstrated that Lackmann's performance was constitutionally deficient, we need not address the prejudice prong of the *Strickland* standard. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

The judgment of the district court is AFFIRMED and the stay of deportation is lifted.