**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 13 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

EUGENE ROMERO,

      Petitioner-Appellant,

v.

ROBERT FURLONG and KEN
SALAZAR, Attorney General, State of
Colorado,

      Respondents-Appellees.

No. 98-1430 & 99-1035

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-WM-1149)

---

Howard A. Pincus, Assistant Federal Public Defender (Michael G. Katz, Federal
Public Defender, with him on the briefs) for Petitioner-Appellant.

Clemmie Parker Engle, Senior Assistant Attorney General, Appellate Division
(Ken Salazar, Attorney General, with her on the brief) for Respondents-Appellees.

---

Before **SEYMOUR,** Chief Judge, **MCKAY** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

      A Colorado state court jury convicted Petitioner-Appellant Eugene Romero

of second degree burglary and theft over $300.  Pursuant to the state's habitual

offender statute, Mr. Romero was sentenced to life in prison. After unsuccessfully challenging his conviction and sentence on direct appeal and state collateral review, Mr. Romero filed the present habeas corpus petition in federal court attacking the constitutionality of his conviction and his classification as a habitual offender. The federal district court denied his petition. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 & 2253 and AFFIRM.

## BACKGROUND

In 1986, Appellant was convicted in Colorado state court of burglary and theft following a jury trial. The jury also determined, in a bifurcated proceeding, that Appellant was a "habitual criminal" under Colorado law because he had previously been convicted of five prior felonies. Based on this finding, the trial court imposed the sentence of life imprisonment.

Ms. Claudia Jordan of the Colorado Public Defender's Office initially represented Appellant on all the charges (i.e., the burglary/theft charges and the habitual criminal charges). Prior to trial, however, the prosecution announced that it intended to call Appellant's former attorney, Mr. Richard Davis, as a witness during the habitual criminal phase of the trial. Mr. Davis had represented Appellant in connection with a 1975 charge to which Appellant pled guilty. Mr. Davis was also a public defender and worked in the same office as Ms. Jordan. Ms. Jordan became concerned that the prosecution's intention to call Mr. Davis as

- 2 -

a witness against Appellant created a potential conflict of interest. After holding a hearing on the issue, the trial court decided to appoint private counsel to represent Appellant during the habitual criminal phase of the trial.

Shortly before trial, the state offered Appellant a sixteen-year sentence in exchange for a guilty plea. Appellant rejected the offer, which would have allowed him to serve only eight years in prison, in order to "have his day in Court." Ms. Jordan informed Appellant that she thought he would likely be convicted at trial and advised him to accept the offer. At that time, Ms. Jordan expressed her opinion to the court that Appellant "is upset because I have given him an honest assessment" of his situation. Appellant insisted on going to trial, was convicted, and received a life sentence.

On direct appeal to the Colorado Court of Appeals, Appellant claimed he was denied effective assistance of counsel because Ms. Jordan had an actual conflict of interest as a result of the government's announced intention to call Ms. Jordan's colleague, Mr. Davis, in the habitual criminal proceedings. [1] See People v. Romero, 767 P.2d 782, 783 (Colo. App. 1988). Appellant also claimed that three of the five prior guilty pleas supporting the habitual criminal adjudication were not knowing and voluntary and were therefore obtained in violation of his

---

[1] Ultimately, the court determined that Mr. Davis' testimony was not necessary, and he was not called.

constitutional rights. See id. at 786. The court rejected both of these claims and affirmed the convictions, the habitual criminal adjudication, and the sentence. See id. at 787.

In 1989, Appellant filed a motion for post-conviction relief in state district court, asserting a variation on his earlier conflict of interest claim. Specifically, this time Appellant argued that his belief that Ms. Jordan was under a conflict of interest made it impossible to trust her, and that he was therefore denied effective assistance of counsel based on the complete breakdown of their attorney-client relationship. The state asserted that Appellant's new ineffective assistance claim was procedurally barred because on direct appeal he had raised an ineffective assistance claim predicated on an asserted actual conflict of interest of counsel. However, the state court determined there was no procedural bar and held an evidentiary hearing on the issue. At the evidentiary hearing, the court heard testimony from both Ms. Jordan and Appellant. Following the hearing, the court ruled that Appellant had not been denied effective assistance of counsel. Appellant appealed this ruling to the Colorado Court of Appeals. However, the Court of Appeals refused to consider the merits of Appellant's new ineffective assistance of counsel claim because Appellant had raised an ineffective assistance claim on the direct appeal and, therefore, this claim was procedurally barred.

In 1995, Appellant filed a federal habeas petition pursuant to 28 U.S.C. §

2254, attacking the constitutionality of his conviction and arguing that he was denied effective assistance on three theories: imputed disqualification of Ms. Jordan; actual conflict of interest on the part of Jordan; and complete breakdown of the attorney/client relationship. Appellant also challenged his habitual criminal classification, claiming that his prior convictions in 1973, 1975, and 1980 were obtained unconstitutionally. The magistrate judge found that Appellant had been denied effective assistance of counsel due to the complete breakdown of his relationship with his attorney and therefore recommended that the district court grant Appellant's habeas petition with respect to his conviction. The magistrate further determined that Appellant's 1973 conviction had been obtained unconstitutionally, but recommended that the district court deny habeas relief from the habitual criminal adjudication (assuming the district court did not agree to grant habeas relief on the underlying conviction) because four of Appellant's previous convictions remained valid and, under Colorado law, only three felony convictions were necessary for classification as a habitual criminal. The district court declined to adopt the magistrate's recommendation in connection with the ineffective assistance of counsel claim but adopted the remaining recommendations and denied habeas relief, both with regard to the conviction and the sentence.

Appellant now appeals the judgment of the district court. Appellant asserts that he was denied effective assistance of counsel based on the total breakdown in communication between Ms. Jordan and himself, and he further argues that the district court erred in not granting him a hearing on the matter. In addition, Appellant contends that the district court erred in failing to grant habeas relief as to his life sentence predicated on the habitual criminal adjudication because his 1973, 1975, and 1980 convictions were not knowing and voluntary.

## DISCUSSION

Appellant filed his § 2254 petition in the federal district court in May of 1995. As a result, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, does not apply to the merits of his claims.[2] See Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed.2d 481 (1997).

As a federal court conducting a review in habeas of state court determinations, our role is secondary and limited. Although we

---

[2] The Supreme Court has recently decided, however, that AEDPA's provisions regarding the issuance of a Certificate of Appealability ("COA") as a predicate to review in the Courts of Appeals do apply to cases in which the notice of appeal was filed after AEDPA's effective date, April 24, 1996. See Slack v. McDaniel, 120 S. Ct. 1595, 1603 (2000). Consistent with Slack, we treat Appellant's notice of appeal in this case as an application for a COA. See id. We further find that Appellant has made the requisite "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (Supp. 1999), with respect to his ineffective assistance and sentence enhancement claims. We hereby grant the COA and exercise jurisdiction over these claims on appeal.

review legal conclusions de novo, a state court's factual findings are entitled to a presumption of correctness. Mixed questions of law and fact are reviewed de novo, but the presumption of correctness will continue to apply to any findings of fact underlying mixed questions.

Castro v. Ward, 138 F.3d 810, 815-16 (10th Cir. 1998) (citations and internal quotation marks omitted). The substance of our review is confined to whether Appellant is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (1994).

## I. Ineffective Assistance

Before addressing Appellant's ineffective assistance arguments, we note that this case presents a number of complex issues concerning the applicability of Colorado's procedural bar to these claims. We need not and do not address these issues, however, because the case may be more easily and succinctly affirmed on the merits. See Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991) ("In the present case, it is in the interest of judicial economy for this court to hear this cause in spite of the unresolved issues of exhaustion and procedural default."); cf. United States v. Wright, 43 F.3d 491, 496 (10th Cir. 1994) (addressing a 28 U.S.C. § 2255 petition and declining to address the procedural bar issue because the claim would fail on the merits in any event).

The core of Appellant's ineffective assistance claims is that he was denied constitutionally effective counsel due to the complete and total breakdown in communication between him and his trial counsel, Ms. Jordan. We have

recognized that "[a] complete breakdown in communication between an attorney and client may give rise to [a presumption of ineffectiveness]." United States v. Soto Hernandez, 849 F.2d 1325, 1328 (10th Cir. 1988). Appellant also complains that the district court should have held a hearing to investigate the alleged breakdown, and, alternatively,[3] that the state record itself demonstrates that such a breakdown occurred. We find that neither argument has merit.

A. Hearing

We disagree with Appellant's claim that the district court should have given him an evidentiary hearing to develop the factual basis for his ineffective assistance claim. Under pre-AEDPA law, the federal courts must give a presumption of correctness to findings of a state court on factual issues:

> [A] determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct . . . .

28 U.S.C. § 2254(d).

---

[3] We note that it is unclear from Appellant's brief whether he is arguing only that the district court erred in not holding a hearing, or also that we should grant habeas relief based on the existing record. We assume that Appellant has presented the latter argument as an alternative ground for reversal, and we address it accordingly.

Appellant contends that three exceptions to this presumption apply in the present case: (1) the state court did not make a factual finding regarding the alleged breakdown in communication, see 28 U.S.C. § 2254(d)(1); (2) the state court applied the incorrect legal standard, see Lafferty v. Cook, 949 F.2d 1546, 1552 n.4 (10th Cir. 1991) ("Only after concluding that a state court used the proper standard does a habeas court turn to the issue of the presumption of correctness."); and (3) the state court's conclusion was not fairly supported by the record, see 28 U.S.C. § 2254(d)(8). We conclude that none of these exceptions applies in the present case.

1. State Court's Factual Finding

In seeking collateral review in the state courts, Appellant argued that his relationship with trial counsel completely deteriorated after he learned that Mr. Richard Davis, Appellant's lawyer in a previous conviction and a public defender in the same office where Ms. Jordan was employed, might be testifying against Appellant at the habitual criminal phase of his trial. Appellant maintained that this perceived impropriety led him to "fear that counsel was disloyal to him," thus rendering the representation constitutionally defective.

The state court held a hearing on this collateral challenge and heard testimony from both Appellant and Ms. Jordan. Ms. Jordan testified that her relationship with Appellant deteriorated dramatically after Appellant learned that

Mr. Davis might be called as a witness in his habitual criminal proceedings. Ms. Jordan also testified that it became "impossible" to have a reasoned discussion with Appellant, and that Appellant had become uncooperative. Appellant testified that Mr. Davis' role in the habitual criminal proceedings made him unable to trust Ms. Jordan and led him to believe he was being "railroaded." As a result, Appellant testified, "I didn't even want to participate in my own trial, to tell you the truth."

The state district court denied Appellant's petition for collateral relief. With regard to the ineffective assistance claim, the court recognized the fact that "the defendant ceased all substantive participation in the trial," but found both Appellant's testimony and his claims of ineffective assistance "incredible." The court specifically rejected Appellant's claim that the potential conflict of interest destroyed his confidence in Ms. Jordan: "The court finds illogical the defendant's testimony that he lost confidence in trial counsel when she raised the conflict of interest." Moreover, the court found that Appellant's dislike of Mr. Davis "should have been manifest earlier if it was in fact the basis for the defendant's personal conflict." Thus, the court concluded that Appellant's behavior was not the result of a complete breakdown in communication between Appellant and Ms. Jordan.

The state court explicitly rejected Appellant's testimony, and it impliedly rejected Ms. Jordan's testimony that a breakdown had occurred. The state district court had been briefed on the <u>Soto Hernandez</u> claim, and it rejected this and any other arguments of ineffective assistance. It is therefore apparent that the state court made a factual finding to that effect because it denied Appellant relief. Thus, § 2254(d)(1) does not negate our presumption of correctness.

2. Legal Standard Used by State Court

The state court had been advised of the <u>Soto Hernandez</u> issue and was clearly aware from its analysis that a total breakdown in communication can support an ineffective assistance claim. We therefore conclude that the court's factual findings were not based on "an erroneous view of the governing law," <u>Lafferty</u>, 949 F.2d at 1552 n.4.

3. Fair Support in the Record for the State Court's Findings

Our review of the state court record reveals ample evidence that there was not here a total lack of communication. With respect to the plea negotiations, it is undisputed that Ms. Jordan communicated the state's offer to him and encouraged him to accept it. And there is ample support for the state court's conclusion that Appellant's refusal to cooperate was simply a trial strategy born out of desperation.

Because Appellant has not shown that any exception to the presumption established in § 2254(d) applies, we are bound by the state court's determination that no complete breakdown of communication occurred. Accordingly, it was not error for the district court to deny an evidentiary hearing.[4] See Scrivner v. Tansy, 68 F.3d 1234, 1242 (10th Cir. 1995) ("Even if disputed issues of fact are raised, a habeas petitioner is entitled to a hearing in federal court only if he did not receive a full and fair evidentiary hearing in a state court . . . which resulted in reliable findings.") (citations and internal quotation marks omitted).

B. Merits

In deciding whether a complete breakdown in communication rendered Appellant's representation constitutionally ineffective, we consider four factors. The first three factors we take from the Ninth Circuit case of Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994): (1) whether Appellant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; (3) "whether the conflict between the

_____

[4] Further, Appellant does not indicate what additional evidence he would present that was not made part of the record in the state court. To the extent he might wish to adduce substantial new evidence, we note that he would be prohibited from doing so under current case law. See Demarest v. Price, 130 F.3d 922, 932 (10th Cir. 1997) ("[A]lthough a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.") (citations and internal quotation marks omitted).

defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." Id. (citation and internal quotation marks omitted). In addition, we think a fourth factor is certainly implied and we now make it explicit: (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication. See Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970).[5]

With regard to the first factor, when the trial court addressed the potential conflict presented by Mr. Davis' service as a potential witness in the habitual criminal phase, Appellant was asked whether, in light of the court's decision to appoint separate counsel for that part of the proceedings, he still wished Ms. Jordan to represent him at trial. Appellant replied: "Yeah, I guess, yeah. No, I don't then." Although this ambiguous statement might be sufficient to inform the court of Appellant's belief that he still thought Ms. Jordan was conflicted, we question whether it gave notice to the trial court that the Appellant was asserting that there was a complete breakdown in communication.

---

[5] In Soto Hernandez we relied on Brown in support of the conclusion that a complete breakdown in communication creates a presumption of ineffective assistance. See Soto Hernandez, 849 F.2d at 1328. We note that Brown, like our decision today, assumes that the defendant's contribution to the breakdown in communication cannot be unjustifiable under the circumstances. The Brown court ordered "a new trial attended with all reasonable assurance that [the defendant] be represented by competent counsel, . . . in whom he may, if he does not demonstrate obstinance, recalcitrance, or unreasonable contumacy, repose his confidence." Brown, 424 F.2d at 1170 (emphasis added).

As to the second factor, we similarly doubt whether the trial court failed to make an adequate inquiry under the circumstances. After Appellant made the above statement, the court inquired of Ms. Jordan whether, in her opinion, the conflict would be resolved through the appointment of separate counsel for the habitual offender proceedings. She indicated that it would. Following that exchange, the Appellant failed to renew his objection or to suggest in any way that he still had a claim of ineffective counsel based on a total breakdown of communication. The court, therefore, quite reasonably could have assumed that it had adequately addressed Appellant's concern as a matter of law, even if Appellant did not agree with the ruling. In light of Appellant's equivocation, we are reluctant to conclude that the district court should have deduced some larger problem and expanded the scope of his inquiry beyond the conflict of interest issue.

With respect to the third factor, we have already explained at length that 28 U.S.C. § 2254(d) requires we defer to the state court's factual determination that no such breakdown occurred. As a practical matter, Appellant's failure on this factor is fatal to his argument, since satisfaction of this factor is a logical predicate to his ineffective assistance claim.

Finally, we note there is significant evidence in the record that whatever difficulty in communication developed between Appellant and Ms. Jordan appears

- 14 -

largely to have been the result of Appellant's decision not to participate in the proceedings. As Appellant candidly admitted in the state court hearing, "I didn't even want to participate in my own trial, to tell you the truth." Appellant also refused at trial to change from his prison clothes into available street clothes and informed Ms. Jordan that he would rather remain in the holding cell than participate in his trial. A breakdown in communication warranting relief under the Sixth Amendment cannot be the result of a defendant's unjustifiable reaction to the circumstances of his situation. In the present case, there is significant evidence in the record that Appellant's difficulties were the product of his negative attitude toward the proceedings and not a justifiable reaction to some outside influence or event. In fact, the district court concluded that Appellant was not sincere in this claim, but was rather desperately attempting to conjure up some error in the proceeding. A defendant cannot simply manufacture a breakdown in communication and thereby give rise to a constitutional violation.

In sum, we conclude that Appellant did not suffer a complete and total breakdown in communication with Ms. Jordan. It is apparent that Appellant made an error in judgment by refusing the state's plea offer, but such mistakes alone do not amount to constitutional error. Accordingly, we affirm the district court's denial of Appellant's ineffective assistance claim.

## II. Sentence Enhancement

Appellant claims that he was improperly sentenced to life in prison under Colorado's habitual criminal statute. Appellant claims that three of his five prior felony convictions were unconstitutionally obtained and therefore cannot serve as predicate offenses for his classification as a habitual offender. We disagree.

At the time of Appellant's sentencing, C.R.S. § 16-13-101(2) (1986) mandated that an individual convicted of a felony after three prior felony convictions receive a life sentence. Upon Appellant's conviction in the instant case, the state introduced evidence that Appellant had previously been convicted of five separate felonies: 1973 (second degree burglary), 1975 (second degree burglary), 1975 (first degree criminal trespass), 1980 (criminal attempt to commit escape), and 1985 (criminal attempt to commit second degree burglary). Appellant unsuccessfully challenged the validity of three of these convictions on direct appeal, state collateral review, and in his federal § 2254 petition. Appellant argues to this court that his guilty pleas were constitutionally defective in the 1973, 1975 (burglary), and 1980 cases.[6] Because Colorado law requires only three prior felony convictions for this sentencing enhancement, Appellant

---

[6] Appellant does not challenge the constitutionality of his 1975 conviction for first degree armed trespass or his 1985 conviction for criminal attempt to commit second degree burglary.

must establish that all three of the challenged convictions were in fact unconstitutional. This he cannot do.

In 1976, Appellant received a furlough from prison, but failed to return and was at large for four years. Appellant was apprehended and in 1980 pled guilty to attempted escape. Appellant contends that this plea was involuntary and unintelligent, and therefore unconstitutional because the plea colloquy misinformed him as to a material element of the offense. According to Appellant, the prosecutor misstated the requisite intent for the offense.

Upon invitation of the presiding judge, the prosecutor recited the elements of the offense. With respect to intent, the prosecutor stated that the Appellant must have "intentionally and feloniously escape[d] from said confinement." Appellant contends that, at that time, Colorado required as an element of the offense that one have acted with the "intent to avoid the due course of justice."[7]

It is well-settled that a guilty plea is not "voluntary in the sense that it constituted an intelligent admission that [a defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him.'" Henderson v. Morgan, 426 U.S. 637, 645, 96 S. Ct. 2253, 2257, 49 L.

_____

[7] The parties dispute whether Colorado law did in fact require this specific articulation of intent at the time Appellant pled guilty to the offense. We need not address this issue, however, since Appellant's claim fails even assuming that he correctly states the law.

Ed.2d 108 (1976) (quoting Smith v. O'Grady, 312 U.S. 329, 334, 61 S. Ct. 572, 574, 85 L. Ed. 859 (1941)). Appellant would have us believe that acting with the intent to escape and acting with the "intent to avoid the due course of justice" are distinct and separate concepts. By definition, however, escape is avoiding the due course of justice. It is a mystery to us how Appellant could agree with the court during his plea colloquy that he had intended to escape from prison, but now maintain that he was not aware that he was likewise admitting to an intent to evade the due course of justice. Thus, we conclude that the prosecutor adequately stated the level of intent required for the offense. A plea colloquy is not rendered constitutionally infirm by the mere failure to recite a legal phase verbatim, and it is beyond question that Appellant was fully informed of the nature of the charge against him. Accordingly, we reject Appellant's claim that his plea was involuntary and unintelligent.

In light of this conclusion, it is not necessary to address Appellant's challenges to his 1973 and 1975 convictions. Even assuming that these convictions were unconstitutional (a question we do not decide), Appellant's 1980 conviction suffices as the third prior felony conviction supporting his classification as a habitual criminal. We therefore affirm his life sentence under the Colorado statute.

**CONCLUSION**

Appellant has failed to show that the district court erred in refusing to grant an evidentiary hearing on his ineffective assistance claim, and he has likewise failed to establish that the district court erred in dismissing this claim on the merits. We also conclude that Appellant's 1980 guilty plea was voluntary and intelligent, and his classification as a habitual criminal was therefore proper. Accordingly, the judgment of the district court is AFFIRMED.