**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 13 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STILLWATER NATIONAL BANK
AND TRUST COMPANY, a national
banking association,

      Plaintiff-Appellant/
      Cross-Appellee,

v.

CIT GROUP/EQUIPMENT
FINANCING, INC., a New York
corporation,

      Defendant-Appellee/
      Cross-Appellant.

Nos.03-5087
03-5088
03-5123
03-5136

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. CV-01-463-H)**

---

Bryan J. Wells and Jared D. Giddens of Conner & Winters, Oklahoma City, Oklahoma, for Plaintiff-Appellant/Cross-Appellee.

R. Tom Hillis (Barry G. Reynolds and Kelley Gilbert Loud with him on the briefs) of Titus, Hillis & Reynolds, PC, Tulsa, Oklahoma, for Defendant-Appellee/Cross-Appellant.

---

Before **MURPHY, McKAY,** and **TYMKOVICH,** Circuit Judges.

---

**McKAY**, Circuit Judge.

This appeal involves a dispute between Plaintiff-Appellant Stillwater National Bank and Trust Company ("Stillwater") and Defendant-Appellee CIT Group/Equipment Financing, Inc. ("CIT") with respect to the proceeds from the sale of certain equipment ("Subject Equipment") once owned by non-party Sabre International, Inc. ("Sabre"). Since 1996, Stillwater has had a blanket lien over all of Sabre's inventory and equipment due to a series of secured loans. Stillwater properly perfected its liens by filing UCC-1 financing statements. In January 1999, Sabre entered into a lease agreement for certain equipment with non-party Preussag-Wasser und Rohrtechnik GmbH ("Preussag"). Aplt. App., Vol. III, at 616-17. The term of the lease was nine months and included a purchase option.

In February 1999, CIT and Sabre entered into an arrangement whereby Sabre assigned its lease with Preussag and certain lease-related equipment to CIT. This document was superseded by a second assignment executed in June 1999. Id. at 630-33. Sabre also executed a separate agreement in February 1999 in which it agreed (1) to make any lease payment if Preussag defaulted under the lease and (2) to repurchase the leased equipment if Preussag did not exercise the option to purchase ("Repurchase Agreement"). Id. at 626-27. CIT expected to receive an eight percent return on the Sabre transaction. Id. at 646.

-2-

In June 1999, Sabre executed a Bill of Sale purportedly transferring title of the leased equipment (which included the Subject Equipment) to CIT.  Id. at 634.  Also in June 1999, Sabre executed a second assignment conveying Sabre's interest in the lease and transferring the Subject Equipment to CIT.  Sabre and CIT did not enter into a promissory note or security agreement in connection with the transaction, and no financing statement was filed.

Pursuant to the assignment of the lease, Preussag made all rental payments to CIT.  At the end of the lease, Preussag exercised its option to purchase some, but not all, of the leased equipment.  The Subject Equipment was included in the equipment that Preussag returned to Sabre's equipment yard.

On March 8, 2001, CIT sent Sabre a letter demanding repurchase of the Subject Equipment returned by Preussag.  Id. at 647.  Pursuant to the Repurchase Agreement, the demand required Sabre to purchase the Subject Equipment "on an **'as is', 'where is'** basis" for a purchase price equal to the remaining balance plus interest.  Id. at 626-27 (emphasis in original).  The Repurchase Agreement provided that title would remain in CIT until Sabre paid the repurchase price in full.  Id.  Sabre defaulted on its repurchase obligation.

Sabre ultimately declared bankruptcy.  CIT was able to sell some of the equipment to a local dealer for $315,000.  The other pieces of the Subject Equipment were sold in Sabre's bankruptcy; and the proceeds, in the amount of

$304,701, are being held in escrow pending a determination of priority between the parties.

On July 12, 2001, Stillwater filed suit against Sabre in state court and sought the appointment of a receiver over all of Sabre's assets. CIT was not a party in the state court action. On July 31, 2001, a receiver was appointed by the state court. The Receiver took possession of the Subject Equipment on July 31, 2001, without notice to CIT. The Receiver testified that he sold one piece of equipment before becoming aware of CIT's claim, after which he escrowed the proceeds. All of the other dispositions of property in which CIT claimed an interest were done with CIT's express consent.

On June 28, 2001, Stillwater filed the instant suit against CIT in an attempt to recover the proceeds from CIT's sale of the Subject Equipment, arguing that it had priority over the proceeds due to its blanket lien. CIT argued that it had purchased the equipment in the ordinary course of business and received the equipment free and clear of Stillwater's lien. Stillwater contended that the transaction between CIT and Sabre was not a sale but a secured transaction and that since CIT is a mere lender with an unperfected lien interest in the Subject Equipment, Stillwater's blanket lien should prevail. The total proceeds at issue are $619,701.

After a bench trial, the court held that the transaction between CIT and

Sabre was a sale and that, therefore, CIT was the owner of the Subject Equipment and entitled to the proceeds. The court rejected CIT's counterclaim that it was entitled to damages from Stillwater's appointment of a receiver, holding that appointment of a receiver can only form the foundation for a claim of conversion if the receivership is declared void. Stillwater appeals the majority of the court's findings of fact and conclusions of law and also requests that, in the event we reverse, the award of attorney's fees and costs be reversed as well. CIT cross-appeals the decision with respect to the receivership question.

As defined by the parties, the issues on appeal are whether the district court erred in its determinations that (1) non-party Sabre sold goods to CIT in the ordinary course of Sabre's business and (2) CIT did not resell the goods to Sabre. On cross-appeal, we are asked to address whether voidness is mandatory in order for the appointment of a receiver to form the foundation for a conversion claim.

We review findings of fact pursuant to a clearly erroneous standard and conclusions of law *de novo*. National Collegiate Athletic Ass'n v. C.I.R., 914 F.2d 1417, 1420 (10th Cir. 1990). However, this case presents mixed questions of fact and law which are reviewed *de novo* with the presumption of correctness continuing to apply to any underlying findings of fact. Id.; see also Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000) (citing Castro v. Ward, 138 F.3d 810, 815-16 (10th Cir. 1998)).

The crux of the issue in this case is whether the agreement between CIT and Sabre was a secured transaction or a sale. If the agreement were a secured transaction, Stillwater prevails because of its perfected blanket lien which would have priority over CIT's unperfected security interest. If the agreement were a sale, CIT prevails because the purchase would be free and clear of Stillwater's lien.

The district court determined that the transaction was a sale. District Court Opinion, Aplt. App., Vol. I, at 182. As a basis for this finding, in its conclusions of law, the court specifically "disregard[ed] that portion of the Assignment signed by Sabre in June, 1999 which purports to merely grant a security interest in the Subject Equipment to CIT." Id. at 181. The court also completely ignored the part of the agreement which specifically required Sabre to repurchase the Subject Equipment at the end of the nine-month lease (the "back end" of the transaction). Based on these omissions, we hold that the character of the agreement, viewed as a whole, was that of a secured transaction.

First, the June 1999 Assignment of Lease between CIT and Sabre specifically provided that the "Assignor [Sabre] hereby grants to Assignee [CIT] a security interest in all property covered by and described in the lease. Title to such property shall remain in the Assignor and is not transferred to Assignee for any purpose." Aplt. App., Vol. III, at 630. Thus, the parties specifically

contracted for a transfer in which CIT would only receive a security interest in the property. The district court disregarded that portion of the Assignment and focused on the fact that Sabre and CIT executed a Bill of Sale and also what it deemed to be "the mutual intention of the parties." Id., Vol. I, at 181. Unfortunately, the district court's order does not provide any analysis or support for this conclusion. To the contrary, it is unclear from the conflicting documents what the parties truly intended. While a Bill of Sale might tend to indicate a sale in the ordinary course of business, surely a specific contract statement regarding a security interest would indicate otherwise.

The front end of the transaction is anything but clear. Thus, the focus of the inquiry is on the back end of the transaction which was ignored by the district court. In addition to the June 1999 Assignment of Lease (which superceded the February 1999 Assignment), Sabre executed a separate agreement in February 1999 in which it agreed to make any lease payment if Preussag defaulted under the lease and to repurchase the leased equipment if Preussag did not exercise its option to purchase. Id., Vol. III, at 626-27. This Repurchase Agreement states that

> [i]f the Lessee does not elect to exercise the purchase option set forth
> in the lease, or in the event of a default in the lease, we will
> immediately upon your request repurchase such Equipment from you
> in its then condition and at its then location and will pay you for such
> Equipment a price equal to your unpaid principal balance plus any
> accrued interest.

Id. at 626. Therefore, the Agreement specifically and unconditionally required Sabre to repurchase the Subject Equipment at the end of the nine-month lease. Id. The Agreement also provided that the resale of the Subject Equipment would be "on an **'as is', 'where is'** basis." Id. at 627 (emphasis in original).

At the end of the lease, the Subject Equipment that Preussag elected not to purchase was returned to Sabre's equipment yard. It is unclear from the record exactly when the Subject Equipment arrived at Sabre's yard, but it is undisputed that it was delivered there at some point after termination of the lease. Pursuant to the Repurchase Agreement, CIT demanded that Sabre repurchase the Subject Equipment. Though Sabre failed in its obligation, the repurchase transaction was not a mere request. Sabre did not have the option to repurchase; it had an unconditional obligation to repurchase the Subject Equipment as is, where is, for a purchase price equal to the remaining balance plus interest. See id. at 626-27. Because of this, at all times Sabre bore the risk of loss. Sabre had to repurchase the Subject Equipment at the end of the lease–in any condition and at any location. Additionally, Sabre and CIT had specifically contracted for a transfer in which CIT would only receive a security interest in the property. See id. at 630.

We agree with Appellant that the substance of a transaction determines its character without regard to form. Okla. Stat. tit. 12A, § 9-102 (Article 9 applies "to any transaction, regardless of its form, which is intended to create a security

interest," including "title retention contract"); Okla. Stat. tit. 12A, § 1-201(9) (1991) ("A person that acquires goods . . . as security for . . . a money debt is not a buyer in the ordinary course of business"); Okla. Stat. tit. 12A, § 2-102 (Article 2 "does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction"); Okla. Stat. tit. 12A, § 9-202 ("Each provision of this Article . . . applies whether title to collateral is in the secured party or the debtor"). The Repurchase Agreement not only stands alone as a separate and independent secured transaction, but it also reveals the true character of the entire deal. The transaction was a financing transaction from the outset, and the failure of CIT to perfect its security interest renders its claim in the proceeds inferior to Stillwater's prior perfected lien. See Okla. Stat. tit. 12A, § 9-312.

CIT's purported retention of title to the Subject Equipment until Sabre remitted payment pursuant to the Repurchase Agreement does not change the result in this case. See Aplt. App., Vol. III, at 626-27. Retention of title devices are limited in effect to the reservation of a security interest. Okla. Stat. tit. 12A, § 2-401. Section 2-401(1) provides that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

We REVERSE the district court and hold that Stillwater is entitled to the

proceeds due to its blanket lien which is superior to CIT's unperfected security interest.  We AFFIRM the district court on cross-appeal because it is unnecessary to address the merits of the receivership question.  The grant of attorney's fees to CIT is VACATED.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.