**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 6, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

    v.

JIMMY EUGENE RHODES,

      Defendant-Appellant.

No. 05-6017

(W.D. of Okla.)

(D.C. Nos. CV-04-615-R and
01-CR-202-R)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.[**]

---

Jimmy Eugene Rhodes, a federal prisoner appearing pro se, filed a writ of habeas corpus under 28 U.S.C. § 2255 in the Western District of Oklahoma. Rhodes claimed he was denied effective assistance of counsel in his federal court trial because of an irreconcilable conflict with his appointed attorney. The district court dismissed the petition and also denied Rhodes's request for a

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

certificate of appealability (COA).  *See* 28 U.S.C. § 2253(c)(1) (requiring an appellant to obtain a COA before appealing a final district court order in a habeas corpus proceeding).  Rhodes now seeks to obtain a COA from us on the same grounds.

Because Rhodes has not made a substantial showing of the denial of a constitutional right, we DENY a COA and dismiss the appeal.

## I. Background

Rhodes was indicted on five counts of drug and firearm violations.  The district court appointed a private attorney, William H. Campbell, who represented Rhodes at trial.[1]  Rhodes was convicted by a jury on all counts on April 10, 2002.

On April 17, 2002, Rhodes, through his attorney Campbell, filed a motion for new trial.  In that motion, Campbell duly recorded Rhodes's complaints about his own performance at trial.  Specifically, Rhodes accused Campbell of failing to procure certain available and necessary witness testimony and alleged that Campbell had "conned" him by recommending that he not testify on his own behalf.  Shortly thereafter, on April 22, Campbell filed a motion to withdraw as

_____

[1] Campbell was Rhodes's third attorney of record.  Rhodes originally hired a private attorney whom he was thereafter unable to pay.  When the attorney sought and obtained withdrawal, the district court appointed a federal public defender whom Rhodes subsequently accused of failing to adequately represent him.  This counsel had to withdraw when another client was announced as a potential witness in Rhodes's case.

attorney of record in Rhodes's case. Campbell stated that, although he had represented Rhodes diligently at trial, Rhodes had filed a complaint against him with the Oklahoma Bar Association, which Campbell only discovered after the trial was concluded. Campbell asserted that Rhodes's actions and the "complete breach of the attorney-client relationship" required that Campbell seek withdrawal. Mot. to Withdraw I, at 1–2. The district court held a hearing on these motions on May 9, 2002, and received testimony from Rhodes and Campbell regarding the alleged breakdown of the attorney-client relationship. The court denied both motions.

On July 9, 2002, Rhodes filed a pro se pleading entitled "Ineffective Assistance" wherein he repeated his prior complaints about Campbell's performance. The next day Campbell filed a second motion to withdraw asserting that, since the prior hearing, the relationship between him and the defendant had deteriorated. He stated that Rhodes believed Campbell "gave him up to the government" and had told Campbell, "I know you work for them maggots [the government] and you can't work for me." Mot. to Withdraw II, at 1–2. Campbell alleged that Rhodes had made unreasonable demands upon his performance and blamed counsel for his conviction. Rhodes indicated that he planned to file additional complaints with the Oklahoma Bar Association, despite its prior finding that his claims were without merit. Thus, concluded Campbell, there was

"no relationship left to salvage between counsel and this [d]efendant" and Rhodes had "no intent of listening to the suggestions or recommendations of counsel," thereby vitiating counsel's function. *Id.* at 2. The district court held a second hearing on July 18, 2002. The court allowed testimony of two witnesses Rhodes insisted should have been called at trial to testify on his behalf. The witnesses' testimony did not support Rhodes's claims, and the district court again denied Campbell's request to withdraw.

After Rhodes was sentenced, Campbell assisted him in appealing his conviction and sentence, which we affirmed on March 27, 2003. Campbell also filed a petition for certiorari on Rhodes's behalf, which the United States Supreme Court denied on October 6, 2003.

Rhodes continues to argue that he was denied effective assistance of counsel based on an irreconcilable conflict with his attorney and asks us to grant a COA so he can appeal the district court's dismissal of his habeas petition. He also requests leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

## II. Analysis

This court may issue a COA only if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."

-4-

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *United States v. Springfield*, 337 F.3d 1175, 1177 (10th Cir. 2003). In addressing this question, we may not engage in a "full consideration of the factual or legal bases adduced in support of the claims," but rather we are limited to conducting "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Generally, a criminal defendant claiming a violation of his Sixth Amendment right to effective assistance of counsel bears the burden of making a two-pronged showing. He must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant so that, but for counsel's errors, there was a reasonable probability the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

In certain circumstances, however, a presumption of ineffectiveness may arise, which makes it unnecessary for the defendant to meet the two-pronged *Strickland* test. *United States v. Cronic*, 466 U.S. 648, 658 (1984). A defendant may be entitled to this presumption if he can demonstrate there was "[a] complete breakdown in communication" between him and his attorney. *United States v. Soto Hernandez*, 849 F.2d 1325, 1328 (10th Cir. 1988). A defendant whose case proceeds to trial with "the assistance of an attorney with whom he has become

embroiled in an irreconcilable conflict" is deprived of effective assistance of counsel. *See Soto Hernandez*, 849 F.2d at 1328 (quoting *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970)) (internal citations and quotations omitted).

In determining whether a breakdown in the attorney-client relationship has rendered a defendant's representation constitutionally deficient, we consider several elements, including the following: (1) whether the defendant made a timely motion requesting new counsel; (2) whether the court adequately inquired into the matter; (3) whether the conflict between the defendant and his attorney was "so great that it resulted in a total lack of communication preventing an adequate defense"; and (4) whether the defendant substantially and unjustifiably contributed to the breakdown in communication. *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).

The district court found that the facts of the case did not support a claim of presumed ineffectiveness based on the four factors above. The court additionally noted that, absent the presumption, the defendant could not prevail, because he could not meet the *Strickland* test for actual ineffectiveness. After conducting an overview of Rhodes's claims for COA purposes, we find the resolution by the district court to be undebatable. We address the factors of presumed ineffectiveness (based on irreconcilable conflict) and actual ineffectiveness (based on the *Strickland* test) in turn.

## A. Presumed Ineffectiveness

All four *Romero* factors disfavor Rhodes. As to the first factor, no motion to withdraw was filed until April 22, 2002, two weeks after the trial was completed.[2] This was too late to address any of Rhodes's concerns about Campbell's alleged failure to interview and call certain witness to testify on his behalf. Therefore, the district court properly found that Rhodes did not show that he made a timely motion requesting new counsel.

As to the second factor, the facts show the district court diligently responded to the claims of ineffective assistance. Within a few days of each filing that raised the issue, the court held a hearing. The court allowed testimony from the parties and even heard testimony from witnesses that Rhodes alleged should have been called at trial on his behalf. After deliberation, the district court denied Rhodes's claims. We are satisfied that the district court adequately inquired into the matter.

---

[2] Although Rhodes claims he sent three ex parte letters asking the judge to "make sure" Mr. Campbell subpoenaed his witnesses, these letters are not in the record. The record contains a written response by the court to one letter sent by Rhodes, but the response only indicates that the defendant had an evidentiary question and that the judge was forwarding his letter to Rhodes's counsel so he could address it. There is no suggestion that Rhodes expressed dissatisfaction with his attorney or requested replacement, and the court later found that any issues raised by the defendant were resolved prior to trial. Dist. Ct. Order at 3.

The third factor requires us to evaluate the scope of the alleged lawyer/client conflict. We look to the district court's fact findings for guidance. Here, after a hearing to consider counsel's first motion to withdraw and defendant's motion for new trial, the court found that the breakdown of the relationship between Rhodes and Campbell was not only engineered by Rhodes but arose after his trial and conviction. The strongest evidence of a conflict was Campbell's motion to withdraw, which was filed after trial. Campbell explained that, following the trial, he learned that Rhodes had filed a complaint against him with the bar association. Campbell also asserted that, since his conviction, Rhodes had grown hostile to Campbell and was no longer receptive to his advice. The district court did not believe this conflict was irreconcilable and admonished Rhodes that, in light of Campbell's able assistance at trial and his intimate familiarity with the case, it was in Rhodes's best interest to continue to work with Campbell on post-trial matters. *Compare United States v. Anderson*, 189 F.3d 1201, 1210–11 (10th Cir. 1999) (finding no abuse of discretion where district court concluded that conflicts between defendant and counsel could be mended and instructed parties accordingly). We do not believe the district court abused its discretion in making this determination. Even if we concluded otherwise on the post-trial issues, however, Rhodes would not prevail on this point, because no evidence discloses a serious pre-trial conflict that prevented an adequate defense.

Finally, as to the fourth factor, we agree with the district court's assessment. The court found, while some of Rhodes's complaints about Campbell's performance may have been based upon the defendant's lack of understanding regarding the availability, willingness, or substance of certain witness testimony, it is also evident that some of his complaints were "contrived or exaggerated." Notably, one of Rhodes's primary complaints was that Campbell had refused to allow him to testify at trial. As the court pointed out at the hearing, however, the judge had advised the defendant on the record of his constitutional right to testify, and Rhodes had declined that opportunity. Tr. at 392. Rhodes also complained that Campbell failed to obtain and offer into evidence tape recordings of a telephone conversation at the county jail. However, as the court and counsel explained to Rhodes, no such tapes existed. Therefore, we are convinced, as the district court concluded, "the [d]efendant substantially and unjustifiably contributed to the breakdown in communication between himself and Mr. Campbell, by making unreasonable demands and unfounded criticisms of Mr. Campbell's efforts." Dist. Ct. Order, at 4.

Accordingly, we conclude that Rhodes has not made a substantial showing of the denial of a constitutional right based on a presumption of ineffective assistance of counsel.

**B. Actual Ineffectiveness**

After conducting hearings and a full analysis of Rhodes's claims, the district court concluded that Campbell "represented the [d]efendant throughout the underlying proceedings in an able and professional manner." Dist. Ct. Order, at 4. On this record, we are convinced the district court's conclusion was correct. Our review reveals that Campbell was a proactive representative in Rhodes's case. Our task is not, with the benefit of hindsight, to second-guess trial strategy that ultimately proved unsuccessful. Rather, we look to whether counsel's conduct satisfied the wide range of acceptable trial conduct. *Strickland*, 466 U.S. at 689–90. We see nothing in the record of this case that warrants a finding of unconstitutionally deficient conduct. Rhodes rests his claim on an allegation that counsel refused to present evidence at trial that was necessary for his defense. When the court investigated his claim, however, it proved unfounded: Rhodes knowingly waived his right to testify; he suggested witnesses whose testimony did not support his defense; and he requested evidence that did not exist.

Without meeting the error prong of the *Strickland* test, Rhodes cannot meet the prejudice prong, which requires a showing that, but for counsel's unprofessional errors, a reasonable probability exists that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 691–92, 694. Therefore, we find Rhodes's claim of ineffective assistance of counsel to be without merit.

### III. Conclusion

For all of these reasons, we conclude that Rhodes has not made a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and that "jurists of reason" would not find the district court's conclusions debatable. Accordingly, we DENY COA and DISMISS the case. We DENY Rhodes's motion to proceed in forma pauperis.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge